[L. A. No. 2156. In Bank.—August 28, 1908.]

THE PEOPLE ex rel. GEORGE H. PECK, Appellant, v.
CITY OF LOS ANGELES, Respondent.

ANNEXATION OF TERRITORY TO MUNICIPALITIES — SHAPE OF ANNEXED
TERRITORY — COURTS CANNOT INTERFERE WITH DETERMINATION.—
Under the act of March 19, 1889 (Stats. 1889, p. 358), providing
for the annexation of territory to municipalities, the question
whether any particular territory of the shape, extent, and character
fixed should be annexed to a municipality is purely political, for
the exclusive determination of the voters of the municipality and of
the territory sought to be annexed, and with the wisdom of such
determination the courts have no power to interfere. They can only
interfere where some substantial provision of the law has been
violated, or where fraud was perpetrated in the matter of the
boundaries or the extent of the annexed district.

ID.—ANNEXATION UNDER LEGISLATIVE CONTROL. — The authority of the
legislature to provide for the annexation of territory to existing
municipalities is derived from section 6 of article XI of the con-
stitution, under which it is left to the legislature to determine, by
general laws, the mode in which either incorporation or annexation
shall be accomplished.

ID.—LIMITATIONS ON ANNEXATION—CONTIGUITY TO OTHER MUNICIPALI-
TIES.—Under the Annexation Act of March 19, 1889, there is no
limitation upon the size and shape of territory proposed to be
annexed, its adaptability for municipal purposes, or its contiguity
to another municipality except the limitation that no territory which
forms any part of any incorporated city or town shall be annexed.
The act neither expressly nor by any rule of construction prohibits
the annexation of territory so as to make it contiguous to the
boundaries of another municipality. On the contrary, the act, by
providing for the consolidation of municipalities only when they
are contiguous, contemplates an annexation of territory so as to
make them contiguous.

ID.—CONSOLIDATION OF MUNICIPALITIES.—Under that law a consolida-
tion of municipalities cannot be effected without their consent, and
if they consent no one has any ground to complain of the con-
solidation.

ID.—NUMBER OF VOTES FOR ANNEXATION.—The voters of the territory
to be annexed, together with the voters of the municipality, is the
body to which the legislature has left the determination of the
matter of the annexation. In the present case, 213 votes cast in
favor of the annexation, in the annexed territory, is a sufficiently
fair and competent body to determine the matter.

ID.—SPECIAL ELECTION—PROCEEDINGS DETERMINED BY LEGISLATIVE ACT ⸺CHARTER OF MUNICIPALITY.—Annexation of territory to a municipality is not a municipal affair, as that term is used in the constitution, and the proceedings thereon, including all matters appertaining to the special election to determine the question, and the form and time of notice thereof, are controlled by the general act of March 19, 1889, and not by conflicting provisions of the charter of the municipality to which the annexation is to be had.

ID.—MANNER OF ORDERING ELECTION—ORDINANCE OR RESOLUTION.—The provision of the charter of the city of Los Angeles that all elections shall be ordered by ordinance, which shall be published ten days, only has relation to elections which are had entirely in the city, and has no application to an election for the annexation of territory to the municipality, which is held at once within and without the city. The Annexation Act does not provide any method by which the election shall be ordered, and the legislative body of the city might order it either by ordinance or by resolution.

ID.—PUBLICATION OF NOTICE OF ELECTION—TIME OF NOTICE—OPPORTUNITY FOR REGISTRATION.—A notice of the special election to determine the question of annexation, which is published for four weeks prior to the election, in strict accordance with the Annexation Act, is sufficient. It is not required, by reason of the provision of section 1094 of the Political Code, that registration for any election shall cease for a period of forty days prior thereto, that notice of the special election should have been given long enough prior to such period of forty days so as to afford every qualified elector a reasonable opportunity to register in the interim.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Gibson, Trask, Dunn & Crutcher, and Frank Karr, for Appellant.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, and W. B. Mathews, for Respondent.

LORIGAN, J.—This is a proceeding in *quo warranto,* questioning the legality of the annexation of certain territory to the city of Los Angeles. The appeal is taken by plaintiff from a judgment entered against him after declining to amend upon demurrer sustained to his complaint, and the only question is as to the correctness of the order sustaining the demurrer.

From the complaint it appears, that at a city election held November 12, 1906, under the Annexation Act of March 19, 1889 (Stats. 1889, p. 358), upon a favorable vote of both the electors of the city of Los Angeles, and certain unincorporated territory contiguous to said city, such territory was annexed to, and became a part of, the city of Los Angeles. The annexed territory consisted of a wide strip, immediately adjacent to and along the southerly boundary line of the corporate limits of said city, together with a strip about sixteen miles in length and about half a mile in breadth, connecting with this wider strip, and extending southerly therefrom to a junction with the municipal territory of the cities of San Pedro and Wilmington and extending along the western boundary of the latter at San Pedro Bay. That each of said last-named cities were at the time of said annexation municipal corporations of the sixth class situated within the county of Los Angeles near the Pacific Ocean and near San Pedro Bay; that, except the portion of said wider strip of territory immediately adjacent to said city of Los Angeles, all the territory intervening between said city and the cities of San Pedro and Wilmington, including said narrow strip of land annexed to the city of Los Angeles, is agricultural and not urban in character.

Under this allegation it is insisted by appellant that the annexation as made is void *in toto,* because contrary to the purposes and intent of the Annexation Act. He concedes that the annexation as made falls within the letter of the statute, but claims that it is not within its spirit; that the Annexation Act was intended to provide for ordinary, reasonable changes in the boundaries of a city; that the annexation in question was wholly abnormal and obviously made for the purpose of blocking the expansion of the cities of San Pedro and Wilmington, and particularly to hem in the latter city on its western boundary and prevent its expansion in that direction, and to ultimately absorb both of said smaller cities by consolidation with the greater municipality.

The claim of respondent is that it is fairly inferable from the form and extent of the annexation that the extension of the limits of the city of Los Angeles along the westerly boundary of the city of Wilmington was only made to give it a frontage on San Pedro Harbor; that the city of Los Angeles is a large inland city, distant from the seacoast at San Pedro by the

length of the territory annexed; that Wilmington and San Pedro are two small cities upon San Pedro Bay, which is a port of commerce that takes its source and life wholly from the city of Los Angeles and the great population in and about that city; that under these conditions it was natural and reasonable that the boundaries of the city of Los Angeles should be extended so as to give it a frontage on San Pedro Harbor, with all the attending commercial and political advantages, and that the extension of its limits for that purpose was both within the letter and spirit of the act.

We have stated the position of counsel upon both sides as to the purposes and objects of this annexation, which each claims is reasonably deducible from the facts alleged in the complaint.

We make no comment on them because we are satisfied that whether the territory in question, and of the shape, extent, and character fixed, should be annexed to the city of Los Angeles, was purely a political question, which, under the act, was left to the exclusive determination of the voters of the municipality and the territory sought to be annexed.

Counsel for appellant do not assail the shape of the annexation, but only its situation relative to the two municipalities of San Pedro and Wilmington and the purpose and effect of such annexation, particularly upon the city of Wilmington. In this connection it will be observed that the plaintiff relator does not attack the annexation on any grounds personal to himself. He does not claim that any fraud or injustice affecting his rights as a resident or taxpayer in the annexed territory was involved in the proceedings for annexation. It does not appear that he is a resident or taxpayer of the city of Wilmington, or in any manner concerned with the effect that annexation will have on the expansion of that municipality.

His plain contention is that the annexation is itself void because no municipality can expand its territory so as to interfere in any direction with the territorial expansion of another city. This position is not tenable.

The language of the statute on the subject of annexation is: "The boundaries of any incorporated town . . . may be altered and new territory annexed thereto . . . upon proceedings being had and taken as in this act provided. The council . . . or the legislative body of any such municipal corpora-

tion, upon receiving a written petition containing a description of the new territory asked to be annexed to such corporation . . . must, without delay, submit to the electors of such municipal corporation and to the electors residing in the territory proposed by such petition to be annexed to such corporation, the question whether such new territory shall be annexed to and incorporated in and made a part of said municipal corporation." ·And, it is provided that should the electors of the municipality and the outside territory vote in favor of annexation, such territory shall be annexed to and become a part of the municipality.

It will be observed from these provisions of the act that there is no limitation whatever expressed in the statute as to the extent or form of the territory to be annexed, and there is nothing from which any limitation can be implied. It has plainly left the matter of the annexation of any territory to a municipality to be determined by the people—the voters of the municipality and the territory proposed to be annexed. The legislature itself, in the very nature of things, could not lay down any rule as to the extent, shape, or character of territory which might be annexed to any given municipality. This must necessarily depend on very many reasons—questions of expediency and policy—affecting in different ways the various municipalities, and adjacent territory to be annexed. Hence it was doubtless concluded by the legislature in conferring a power of annexation in the general terms used in the statute that the voters in a municipality could best determine whether its growth and conditions surrounding it called for an extension of its municipal limits by the increase of additional territory and its extent, and that the voters of the territory proposed to be annexed could with equal wisdom determine whether it was of advantage to them to become a part of the municipality to the extent and in the form as proposed. With the wisdom of their determination in the matter the courts cannot interfere. They only interfere where some substantial provision of the law has been violated or where fraud was perpetrated in the matter of the boundaries or the extent of the annexed district. That the extent and shape which the annexed territory shall take is a political, and not a judicial question, is clear from the conclusion announced by this court in the case of *People* v. *Town of Loyalton,* 147 Cal.

774, [82 Pac. 620]. In that case it is true that the court had under consideration a question as to the incorporation of a city under the general municipal Incorporation Act (Stats. 1883, p. 93), but the principle decided there, that it was exclusively a matter for the legislature to say what tribunal or how these boundaries should be fixed, is equally applicable to the fixing of the boundaries of territory to be annexed to an existing municipality under the Annexation Act.

It is there held that under the constitution all questions as to population and extent and character of territory to be included in the incorporation of cities or towns is left entirely to the legislature, and that under its power to provide for the incorporation of such municipalities, the question of the extent and character of territory proposed to be incorporated is left, under the general municipal Incorporation Act, as the legislature was authorized to leave it, exclusively to the board of supervisors of the county in which the city is to be incorporated, and that the courts have no control of the subject. Under the Annexation Act, the determination of the question is equally left to the voters of the municipality and the territory proposed to be annexed. If, in the one instance, the courts cannot interfere with the action of the board of supervisors on the question as to the territory to be incorporated, it cannot interfere in the other, with the determination of the voters as to the boundaries of territory to be annexed. The authority of the legislature to provide for the annexation of territory to existing municipalities is derived from the same constitutional provision (sec. 6, art. XI), which authorizes it to provide by general laws for the incorporation of cities. Under the constitution it is left to the legislature to determine the mode in which either incorporation or annexation shall be accomplished. What mode should be adopted was, therefore, purely a question of policy and expediency. It could have left the matter of extent and character of territory to be incorporated or annexed either to the determination of some city or county legislative body, or directly to the voters of the locality to be affected. Under the general Incorporation Act it left it to the inhabitants of the territory proposed to be incorporated into a city, in the first instance, the right to determine the extent of such territory, limited only by authority granted the board of supervisors to change the boundaries

proposed before submission of the matter to the voters, by excluding some part of the proposed territory. To this legislative body alone was left the power to finally determine the extent of said incorporation boundaries, and having done so, no right to interfere with such selection existed in the courts. So, in the case of the annexation of territory, the power to fix its boundaries is conferred by the legislature directly upon the voters of the territory to be annexed and the annexing municipality, and no authority is conferred on any legislative body or judicial tribunal to review or interfere with their election upon the subject merely because of the form or extent of the territory annexed. (See, also, *People* v. *Ontario,* 148 Cal. 625, [84 Pac. 205].)

The language used in the Annexation Act is equally as broad as that contained in the general Incorporation Act with respect to the territory which may be annexed or incorporated. The size and shape of territory, its adaptability for municipal purposes, its extent and contiguity to another municipality, are all matters which are left to be determined by the people of the territory to be annexed and the annexing municipality. In the Annexation Act the territory which may be annexed is referred to in general terms "as territory proposed to be annexed" or "the annexed territory," and the only limitation which is imposed as to such territory proposed to be annexed is that no territory which, when the petition for annexation is presented to the legislative body of the city, forms any part of any incorporated city or town shall be annexed under the provisions of the act (Stats. 1889, p. 360). There is no other limitation. Aside from this there is no limitation as to the size, shape, or character of territory. There is certainly no provision against the annexation of territory so as to make it contiguous to the boundaries of another municipality. Neither is there any rule which requires the Annexation Act to be construed as prohibiting it. In fact, instead of prohibiting the contiguity of cities, the law contemplates that they may become so because it provides for their consolidation, but only permits it when they are contiguous. (Stats. 1883, p. 97.) As existing municipalities can usually be made contiguous only by the extension of municipal boundaries, the simple fact that the annexation of outside territory accomplishes that result can be no objection to the validity of such annexation.

As far as the claim is made that the effect of the extension of the limits of Los Angeles, as accomplished, will be to compel the consolidation of the smaller municipalities with the larger city, the answer is that under the law such consolidation cannot be effected without the consent of the smaller cities, and if they consent, as the law says they may, no one has any ground of complaint.

It may be said, too, that the claim of plaintiff that the effect of the extension of the limits of Los Angeles along the westerly boundary of the city of Wilmington is to prevent the natural expansion of the latter city, is, in fact, more fanciful than real. San Pedro Bay naturally prevents expansion southerly, but there is nothing to prevent its expansion to the northward and eastward. It has still unlimited power of extension in those directions. And while it is restricted in its extension to the westward, there is no law which prohibits another municipality when its present municipal necessities require it, from extending its boundaries by annexation because such extension may possibly prevent future expansion of another municipality. The contiguity of the boundaries does not affect the integrity of the present city of Wilmington, and that it might in the future, if not restricted by proximity to another city, extend in a given direction, is no reason why that other city, one of larger and increasing growth, whose practical and political necessities call for an extension of territory so as to bring it in touch with the seacoast, should be precluded from doing so merely because at some future time the natural extension of the smaller city might possibly trend in the direction of the annexed territory.

While it is claimed that the voters of the annexed territory did not constitute a fair and competent body to pass upon the question of the annexation as made, it is sufficient to say that it was the body to which, with the voters of the municipality, the legislature left the determination of the matter. There were 213 votes cast in favor of the annexation in question here. In the Loyalton case, to which we have referred, 79 votes constituted a body sufficiently competent to include in the incorporated city of Loyalton 52 square miles of territory. Certainly 213 voters were a competent body to determine the matter of annexation of a comparatively much smaller territory.

If it be unwise legislation to grant the power to voters in the respective localities as broadly as it is conferred under the Annexation Act, appeal must be made to the legislature itself. That body has the constitutional power to confer the authority on them to do so and has done it, and whether it was wise or not, the courts cannot inquire into it.

Counsel for appellant would have us construe the statute as conferring such power on the court, but it is capable of no such construction. All matters of size, extent, form, and character of territory are committed to the popular vote under the act, and unless some substantial provision of the law has been violated, as appellant further contends, his attack upon the annexation itself cannot be sustained.

In that line it is insisted that the annexation was void because the ordinance calling the special election on that question and ordering notice thereof to be given, was published but once and not for ten days, the period for which the charter of Los Angeles prescribes that all ordinances calling elections shall be published. There is no merit in this point. The proceedings for annexation are had under the act of 1889, which act provides a complete scheme for annexation, and the provisions of the charter have no bearing on it. The act is a general law and controls and is superior to charter provisions, except only in "municipal affairs." Annexation of territory to a municipality is not, in any view, a municipal affair, as that term is used in the constitution. It could not be accomplished under any provisions of the charter of Los Angeles, but solely under the general law. (*People* v. *City of Oakland*, 123 Cal. 598, 602, [56 Pac. 445]; *People* v. *Ontario*, 148 Cal. 625, [84 Pac. 205].)

While it is true that the charter provides that all elections shall be ordered by ordinance, which shall be published ten days, this only has relation to elections which are had entirely in the city. It cannot have application to an election held at once within and without the city, and which has relation to matters outside of municipal affairs. An annexation election is an election held in the city only to the extent that the city is one of the parties whose electors have a voice in determining the question of annexation. Authority to hold an election at all for that purpose is granted solely by the Annexation Act, which prescribes the terms, conditions, and mode to be fol-

lowed in submitting the question to both the voters of the municipality and the territory to be annexed, and as it provides a perfect scheme for that purpose, its provisions alone govern. All that the act prescribes as to notice of the election is that such notice shall be given by publication for four weeks in one newspaper published in the city and one in the outside territory, if one be published there. It does not direct any method by which the election shall be ordered. The legislative body of the city might have ordered it by either ordinance or by resolution. It was not required to do it by ordinance. It might adopt that method, not on account of any provision of the annexation law requiring it, but because, in the absence of any prescribed method, it could elect to avail itself of such method as it deemed advisable. It could, of course, not be claimed that the publication of the ordinance for ten days was necessary so as to give legal notice to the voters in the outside territory. As to them it must be conceded that the provisions alone of the Annexation Act had application, and the publication of the ordinance as made was all that was necessary. The claim is only that in order to give legal notice to the electors of the city the ordinance should have been published for ten days. It is not pretended that the charter provides any machinery (because it does not) whereby the annexation election could be held entirely under it, but only that this particular provision of it had application and must govern. This, however, would present an anomalous condition of affairs, arising from the application of two different laws; the annexation law governing the procedure as far as the electors in the outside district are concerned, and the charter governing it as to electors in the city. We are satisfied that no such situation is presented. The charter provisions as to elections have relation only to elections held solely in the city. They have no application to an annexation election, which is in no respect a "municipal affair," but a matter entirely outside of such affairs. Such elections are governed by the provisions of the Annexation Act alone, and in the matter of notice its provision was complied with.

The last point made by appellant is that the notice given of the election was not sufficient, reasonable, nor legal. The notice was published for four weeks prior to the election as provided by the Annexation Act. It is conceded that the notice as

given filled the express requirements of the act taken by itself, with respect to length of time, but it is claimed that as under section 1094 of the Political Code, in force when the election was held, registration for any election is forbidden for a period of forty days prior thereto, it was incumbent on the city council of Los Angeles, which called the election, to give notice thereof long enough prior to such period of forty days, so as to afford every qualified elector a reasonable opportunity to register in the interim; that there is nothing in the Annexation Act preventing the giving of such a notice as would afford an opportunity to register and that the act and the section of the Political Code must be construed together as requiring a notice which will give sufficient time for electors to do so.

We do not think the point as made has any force. The registration law makes no provision for registration for any particular election. It provides that on the first of January of the even numbered years a new registration of voters shall take place. The new register so made is to be used for any election which may be had during these two years, whether it be special or general, and no one may vote at any election held during such time unless he is registered. No provision is made for a registration for any special election, but simply a general registration, under which the voters may participate in any election which may occur, whether it be special or general, and every voter has notice, because the law so provides, that for any election which may be called during that period, no matter how called or for what purpose, no registration within forty days preceding it is permitted. Every voter is given the same opportunity to be registered and so be prepared, at any election which may happen, to exercise his voting privilege. It is of no moment to say that electors do not know that a special election will be had at any particular time. They do know, however, that special elections are had, and in contemplation of law are charged with notice that special elections for annexation of territory and for many other purposes are provided for by law, and may be held at any time, and within a period which will not give them an opportunity to vote thereat, unless registered when the election is called. The registration law makes no distinction as to elections, and does not take at all into consideration, special elections as such. Its policy is that electors shall be prepared by previous registration to vote

at any election which occurs, whatever its character, and there can be no valid reason presented why a special election called in express conformity to the statute should be annulled merely because notice of it was too short to permit some electors to register and participate in it, when they were already given under the registration law ample time and opportunity to be prepared to do so.

There are very many statutes in force in this state on the subject of special elections for various purposes, some passed prior, and some subsequent, to the amendment to section 1094 of the Political Code requiring registration to cease forty days before elections, and all permitting elections to be held in much less than forty days from the date of the notice. Many of these statutes provide for such special elections in order to authorize the issuance of municipal and other bonds for various purposes, and it may be safely said that bonds of the value of millions of dollars are now outstanding, the issuance of which have been authorized at such special elections. Many cases have been presented to this court involving the validity of such elections, but the point has never been asserted, which is asserted now, that these elections were invalid on account of insufficiency of notice. If the point was deemed of any special merit, it is hardly to be supposed that in the different cases, counsel attacking the validity of such elections, would have overlooked it. This, of course, is no reason why, if there is any merit in the point, it cannot be availed of now, but in view of the fact that such point has never been deemed of sufficient importance to be heretofore presented for determination by this court, in cases which involved it as fully as it is involved here, and considering further the vast present interests to be disastrously affected by now sustaining it, some authority, persuasive in its reasoning, would have to be presented before we would feel constrained to do so. None has been. Counsel for appellant cite and quote from some cases which they claim support this contention. Our reading of them compels a different conclusion. They are all cases relating to violations of plain provisions of statute as to notice, or involving provisions of law which so limited the time within which an elector might register, as to amount to a practical denial of the right to register and vote, or cases where no general registration was provided for and the right to vote could only be given

by special registration. They have no bearing on the matter under consideration, where general registration for all elections offers electors ample opportunity to register and vote, and where no provision for special registration for elections is provided for.

The judgment appealed from is affirmed.

Shaw, J., Sloss, J., Angellotti, J., and Henshaw, J., concurred.