[Civ. No. 9561. Second Appellate District, Division Two.—October 10, 1935.]

THE PEOPLE ex Rel. JOHN STEVEN McGROARTY, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

432

U. S. Webb, Attorney-General, and Leon French, Deputy Attorney-General, Biby & Biby and John E. Biby for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Robert J. Stahl, Deputy City Attorney, for Respondent.

GOULD, J., *pro tem.*—This is an inquiry by *quo warranto*, as of the date of judgment herein, as to the legal corporate status of the territory embraced within the limits of the city of Tujunga, Los Angeles County. It is claimed by plaintiff that notwithstanding there were proceedings looking toward the consolidation of the city of Tujunga with the city of Los Angeles, including an election for that purpose held January 5, 1932, and notwithstanding the two cities are now being governed and ever since early in the year 1932 have been governed as one consolidated city, said proceedings are so defective that they were and are void and should be judicially so declared.

The Consolidation Act (Stats. 1913, p. 577; Deering's Gen. Laws, 1931, Act 5166, p. 2593) provides that contiguous cities may consolidate and proceedings may be initiated by the filing of a petition with the council of the city with the lesser population, such petition to be signed by "not less than one-fourth in number of the qualified electors . . . as shown by the registration of electors" of the city of the lesser population.

Upon such a petition being so filed the council *"must,* without delay, call a special election*"*. It may be said that there are several jurisdictional facts in such a proceeding. In the first place, there must be the two cities—in this case the cities of Tujunga and Los Angeles; they must be contiguous; inasmuch as the petition must be presented to the city having the lesser population, the fact as to relative population must be established; the petition must be signed by a certain proportional number of the total number of electors as shown in a certain manner. The jurisdiction of the council to act is premised upon these required conditions of fact.

In point (1) of appellant's brief herein it is claimed that one of these essentials is lacking in proof, that is, territorial contiguity. But cities are incorporated through public legislative acts, and their boundaries are in the acts delineated. Such acts are recognized by judicial bodies without proof, and the case of *Gardner* v. *City Council of Tujunga,* 140 Cal. App. 351 [35 Pac. (2d) 562], holds that the city council of Tujunga was permitted to take judicial notice of the boundary lines of that city and the city of Los Angeles, and hence of their contiguity. (See, also, *Rich* v. *McClure,* 78 Cal. App. 209 [248 Pac. 275], and *People* v. *City of Whittier,* 133 Cal. App. 316 [24 Pac. (2d) 219].)

Appellant calls our attention to the fact that section 5 of the Consolidation Act permits the assumption of existing bonded indebtedness of one city by the other by a proper recital in the petition. Such assumption is limited by the act to indebtedness already incurred or authorized for the *acquisition, construction or completion of any municipal improvement or improvements.* The petition filed in this proceeding lists a number of such and plaintiff claims that this, too, is jurisdictional and that the status and purpose of such bonds must be supported by proof. We think not. We have tried to show that the only matters heretofore stated as such are jurisdictional because the act says that "whenever" the petition has been filed relating to two actually existing municipal corporations the election *must* be called. The assumption of debts is incidental. If they exist and are within the statute they are assumed; if not, no liability under them is assumed. This phase although an important one is nevertheless not requisite to the action of the council in calling an election for, or to the consolidation itself.

Appellant as to this position relies greatly upon *Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254 [208 Pac. 304], a proceeding in *certiorari,* but the opinion in that case merely holds, as do many others, that facts essential for official *action* must be supported by evidence or proof. Notwithstanding the assertion in the cited case that "the allegations of the petition" must be proved, it is apparent from the context that these words refer only to such essential facts as the board or tribunal must find true before it acquires the right to act at all. In *certiorari* the reviewing court merely inspects the procedure and never acts as an appellate tribunal as to the truth of the lower court's findings. In *quo warranto* the jurisdiction, together with the truth of requisite facts, may be put in issue. In the instant case contiguity of territory was essential to legal consolidation of the two cities. If the proof, which herein was at least judicial notice, led to an erroneous conclusion thereon, *quo warranto* will void the consolidation. On the other hand, if one of the bond issues of one city was improperly stated in the petition, any attempt to levy taxes in the territory of the other city for payment thereof would be open to legal attack, but such fact would not affect the legal status under the consolidation proceedings.

The true principle to guide the court in a consideration of the acts of an official body such as those under consideration here is stated by the Supreme Court in *Wolfskill* v. *City Council of Los Angeles,* 178 Cal. 610, at page 614 [174 Pac. 45], as follows: "We are of the opinion that the trend of both recent legislation and decision has been toward a relaxation of this rigid rule in respect to the procedure before official bodies chiefly political in their character and powers and only occasionally exercising judicial functions, with a view to upholding the action of such bodies which, though informal in some respect, is taken with a view to advancing the public interest and welfare of the community within the limited range of their jurisdiction."

These principles dispose of the claim that jurisdiction was not acquired herein because no evidence was taken on the point of contiguity of the two cities, and also dispose of appellant's claim that the consolidation proceedings must be declared void because no evidence was taken upon that part of the petition which referred to bond issues. They likewise

dispose of the claim that since one of the bond issues in the list was illegally there the proceedings are void.

It should be remembered that there is no claim in this proceeding that the two cities were not contiguous nor that the bond issues concerned were not correctly described. It is, however, claimed that one of such mentioned bond indebtednesses of the City of Los Angeles was not "for the acquisition, construction or completion of any municipal improvement or improvements", and this seems to be conceded.

The next point to which our attention is directed by appellant is that the certificate of the consolidation election of the city of Tujunga is fatally defective in that it merely mentions that the consolidation proposition carried and not that indebtedness was assumed. Counsel is in error, as the proposition of consolidation and the assumption of indebtedness was one indivisible proposition upon which the vote was taken. (*People* v. *City of Los Angeles*, 187 Cal. 56 [200 Pac. 947].) The resolution declaring the result of the election, taken as a whole, with the minutes and acts of the city council of Tujunga to which such resolution refers, constitutes a full compliance with the statutory requirement, to wit, that the legislative body declare the result of the election and that it cause a record of such declaration to be made. No set form is prescribed, and the courts will not intervene for technical or trivial reasons to set aside the will of the people as expressed at an election. If the city clerk failed to enter the proceedings in full upon the minute book, this at most is a failure to perform a ministerial act, and cannot be urged as a reason for invalidating the entire proceedings.

Pursuing this point, appellant contends that the error complained of was carried into the record sent to the secretary of state, and that for that reason also the consolidation was never completed. Of course, if we are right in our analysis and conclusion above it would cover both contentions.

Upon this point it is forcefully urged by respondent that inasmuch as appellant has chosen to set out his complaint in full in the *quo warranto* proceeding, he is limited to the allegations therein contained, and that since he has not raised the point of insufficiency of the certificate in his complaint he cannot raise it here. (*People* v. *City of Los Angeles*, 133 Cal. 338 [65 Pac. 749].) We look with favor upon this reasoning,

but prefer nevertheless to cover the point from the viewpoint of merit.

■ The next point of attack as to the legality of the consolidation of the two cities, to wit, that the City of Los Angeles improperly attached the emergency clause to its resolution confirming consolidation, falls with our view of the last proposition treated. It is appellant's contention that inasmuch as the resolution forwarded to the Secretary of State is fatally defective for the reason above set out, and inasmuch as the emergency clause was improperly attached as stated, the resolutions of the councils of both cities reached the Secretary of State before they were effective, and therefore are nullities. But if, as we have determined, the resolutions were in form correct, they were in the Secretary of State's office thirty days after the enactment of the ordinance to which the emergency clause was attached, and the error would have been cured, if error it was.

■ We next approach the contention on behalf of appellant that the election in Tujunga was conducted at the polls under *one* inspector, *one* judge and *two* clerks, instead of *one* inspector and *two* judges, as provided by the Consolidation Act. No provision is contained in said act as to clerks. It would, of course, be quite impossible to produce any sort of plausible argument that any effect upon the results of the election (the results being the real intent of the law instead of the fetish of strict adherence to form) was produced because of the fact that instead of two judges, one judge and two clerks were on the election board. None is claimed. The law itself but indefinitely defines the duties of the several members of the election board, and there was present one person for each of these separate duties. In addition there were two clerks. To hold that the election would be entirely voided because the board was furnished clerical help seems too unreasonable to entertain. To contend that the one judge provided could not have performed all of the *judicial* duties of a board of election would be to argue in the face of known fact and in the face of the statute providing for all elections held in fifth and sixth class cities and requiring but *one* inspector, *one* judge and *two* clerks. (Act 5229, Deering's Gen. Laws, 1931, p. 2730.) Respondent contends that since this last act was enacted later than the Consolidation Act it controls, and this evidently was the opinion of the

legal departments of the two consolidating cities. But however that may be, we shall continue to treat the question as though the Consolidation Act controls even in this particular.

There is no dissent in either brief to the wholesome doctrine that election laws are to be liberally construed to the end that when an election has been held the expressed will of the electors thereat will not be vitiated by any court because of any error committed in the course of the election, so long as the error complained of is not one which was likely to change the result of an election or one actually affecting the result of such election. In avoidance of this appellant relies upon the provision in section 7 of the Consolidation Act, as follows: "In the event any election authorized by this act is not called or held in the manner or within the time specified in this act, all proceedings relating to such consolidation shall be and become null and void." This provision was not in the original act and is incorporated in section 7 thereof directly after appropriate provisions to prevent cross-attempts, and legal entanglements resulting therefrom, to consolidate one city with other cities. It seems rather clear that this penalty was never meant to apply to an·inconsequential variance in the actual election. Nowhere else in the California statutes is such an intention manifest, and the general rule is as heretofore stated.

We thoroughly agree with appellant in his approval of the rule stated in *Cramer's Election Case*, 248 Pa. St. 208 [93 Atl. 937, Ann. Cas. 1916E, 914], as follows: "It is an established rule of construction that where a legislative provision is accompanied with a penalty for failure to observe it, the provision is mandatory." It is true that the Consolidation Act, above referred to, has such a provision. But the rule itself is not absolute to the least variation. In construing such a rule in *Taylor* v. *Bleakley*, 55 Kan. 1 [39 Pac. 1045, 49 Am. St. Rep. 233, 28 L. R. A. 683, 686], the court says: "If a statute expressly declares any particular act to be essential to the validity of an election or that its omission shall render the election void, the courts whose duty it is to enforce the law, as they find it, must so hold, whether the act in question goes to the merits or affects the result of the election or not; for such a statute is mandatory and the court cannot enter into the question of its policy. In this instance it has declared that the mode by which the elector shall express his choice shall be by stamping

certain designated squares on the ballot. There is nothing unreasonable in the requirement; it is simple and easily understood." It will be noticed the case speaks of an omission to follow the statute in its requirement as to the method in which the elector shall express himself, a primary requirement. There was *no* such omission in the instant proceeding. It also speaks of the requirement that was omitted as not being unreasonable. We see that the rule of reason in construction is used even where the penalty is provided.

The rule is expressed thus by our own Supreme Court in *People* v. *City of Los Angeles, supra,* 133 Cal. 338, page 344: "As to which of these conflicting provisions should have been followed even a city council might err. Nor do I think it necessary to decide that question. These provisions have been stated mainly in illustration of the conclusion that as to formation of voting precincts such provisions are directory merely; so that if it be conceded that the wrong statute was followed, or that neither was strictly followed, the election was not void. Such provisions are directory, not mandatory. It is not declared that a failure to observe the direction of the statute as to the number or size of the precincts shall invalidate the election. 'It is only those provisions of the statutes relating to the time and place of holding elections, the qualifications of the voters and such others as are expressly made essential prerequisites to the validity of an election that are held to be mandatory; all others are directory merely; and a failure to observe them, caused by honest ignorance or mistake, and not resulting in manifest fraud, does not afford ground for rejecting the entire vote of a precinct.' "

We conclude that the variation from the statutory designation in the matter of personnel in the officers of the election board does not void the consolidation election.

Appellant's final contention has to do with the fact that certain bonds submitted to the electors of the city of Tujunga at the consolidation election were not incurred or authorized for any municipal improvement. Reference is had to the funding bonds of the City of Los Angeles incurred by that city for the settlement of damage claims arising out of the St. Francis dam disaster. As to this issue there can be no doubt that the act does not provide any method by which the city of Tujunga might assume to pay its share of these bonds. Even though the voters agreed to assume them, no

tax can be lawfully levied concerning them. No decision has been cited wherein a consolidation or similar proceeding has been nullified because an attempt was made to include more than the law authorized. We prefer to adopt the reasoning indicated in *State* v. *Town of Hessville,* 191 Ind. 251 [131 N. E. 46, 132 N. E. 588], that an attempt to do more than the law authorizes does not result in invalidity of that which was authorized, but invalidates only that for which there was no statutory authority. So here, the inclusion of a bond issue for which the statute makes no provision results simply in the invalidity of the proceedings as to that single issue, leaving the authorized issues untainted by any stigma of illegality.

In spite of the irregularities and slight deviations from normal stressed by appellant in this proceeding, we feel that the courts should, where possible, give effect to the expressed will of the people as indicated at an election at which the issues were clearly presented to the electorate and where there was no possibility of serious misunderstanding as to the points involved.

Judgment affirmed.

Crail, P. J., and Wood, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 8, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.