[Civ. No. 13840.   First Dist., Div. Two.   Mar. 18, 1949.]

CITY OF BURLINGAME, Appellant, v. THE COUNTY OF SAN MATEO et al., Respondents.

[Civ. No. 13841.   First Dist., Div. Two.   Mar. 18, 1949.]

THE PEOPLE ex rel. ROBERT E. FERRANTI, Respondent, v. CITY OF BURLINGAME et al., Appellants.

I. Karmel Kirkbride & Wilson, Arthur J. Karzfeld, O'Melveny & Myers, Louis W. Myers and Jas. L. Beebe for Appellants.

Fred N. Howser, Attorney General, Gilbert D. Ferrell, District Attorney, J. W. Coleberd and Richard P. Lyons for Respondents.

DOOLING, J.—Two appeals are here consolidated, one from a judgment in a quo warranto proceeding, entered in favor of the State of California on relation of Robert E. Ferranti holding the annexation to the appellant city of Burlingame of certain uninhabited territory to be void, and the other from a judgment dismissing a petition for writ of review filed by appellant city of Burlingame against the county of San Mateo and its board of supervisors to test the jurisdiction of proceedings looking to the incorporation of the city of Millbrae.

On August 1, 1946, Mills Estate, Incorporated, filed a petition pursuant to the Annexation of Uninhabited Territory Act of 1939 (Stats. 1939, p. 1567; 2 Deering's Gen. Laws, Act 5162) with the City Council of Burlingame for the annexation to the city of Burlingame of certain uninhabited lands belonging to it. The procedural steps required by the statute were duly taken and an ordinance of annexation was adopted. After the proceedings for annexation to Burlingame were instituted a petition was filed with the board of supervisors looking to the incorporation of the city of Millbrae and including within the boundaries of this proposed municipality the same lands which were the subject of the proceedings for annexation to Burlingame. The litigation thus grows out of the rivalry arising from the efforts to incorporate these lands into one or the other municipality.

Appellant city of Burlingame entered court first with its petition for writ of review seeking a judgment that by reason of its annexation to Burlingame the board of supervisors exceeded their jurisdiction by attempting to include the same property within the proposed limits of Millbrae. It is undisputed that if the annexation to Burlingame was valid this claim was correct since the first proceeding in point of time

excludes the jurisdiction of the later one. (*People* v. *City of Monterey Park*, 40 Cal.App. 715 [181 P. 825].) However in the quo warranto proceeding, tried first though filed later, the respondent State of California attacked the validity of the annexation proceedings and obtained a judgment declaring the annexation to be void. Since the judgment in that proceeding was on the merits we will address ourselves first to the appeal from that judgment.

■ Section 10 of the Annexation of Uninhabited Territory Act of 1939 as amended in 1945 (Stats. 1945, p. 707) provides "that no property within such annexed territory shall ever be taxed to pay any portion of any indebtedness or liability of such municipal corporation contracted prior to or existing at the time of such annexation; provided, however, that such annexed territory may be so taxed in the event the owner . . . thereof shall consent in writing thereto and said written consent shall have been filed with the clerk . . . prior to the adoption of the ordinance approving such annexation." The annexation ordinance provided that the annexed land "shall be proportionately subject to all of the burdens and obligations and benefits existing at the date of said annexation." No written consent had been given by Mills Estate, Incorporated that the annexed territory should be taxed to pay a portion of the existing indebtedness of Burlingame, and the trial court concluded that by reason of the quoted provision of the annexation ordinance the annexation was rendered void.

This conclusion is directly contrary to the principle announced in the only California case on this question. In *People* v. *City of Los Angeles*, 9 Cal.App.2d 431 [50 P.2d 101] the court considered the validity of a consolidation proceeding wherein the question had been presented to the voters as to whether the annexed city should assume a proportion of the liability for a certain indebtedness of the annexing city where the consolidation act made no provision for the assumption of a debt of that character. The court held the consolidation proceeding valid, saying on the particular question (9 Cal.App.2d 439, 440) :

"Appellant's final contention has to do with the fact that certain bonds submitted to the electors of the city of Tujunga at the consolidation election were not incurred or authorized for any municipal improvement. Reference is had to the funding bonds of the City of Los Angeles incurred by that city for the settlement of damage claims arising out of the

St. Francis dam disaster. As to this issue there can be no doubt that the act does not provide any method by which the city of Tujunga might assume to pay its share of these bonds. Even though the voters agreed to assume them, no tax can be lawfully levied concerning them. No decision has been cited wherein a consolidation or similar proceeding has been nullified because an attempt was made to include more than the law authorized. We prefer to adopt the reasoning indicated in *State* v. *Town of Hessville*, 191 Ind. 251 [131 N.E. 46, 132 N.E. 588], that an attempt to do more than the law authorizes does not result in invalidity of that which was authorized, but invalidates only that for which there was no statutory authority. So here, the inclusion of a bond issue for which the statute makes no provision results simply in the invalidity of the proceedings as to that single issue, leaving the authorized issues untainted by any stigma of illegality.''

Substitute ''city council'' for ''electors'' and the cases are on all fours. We see no occasion for discussing cases from other jurisdictions since on this point the quoted portion of the opinion is controlling and compels the conclusion that the trial court was in error. This is the only ground on which the trial court decided in respondent's favor but respondent urges the following grounds in support of the judgment although on each the trial court ruled against respondent.

The petition for annexation contained the following conditions:

''In consideration of the annexation . . . the said properties after the annexation shall be proportionately subject to all the burdens and obligations of the City of Burlingame in the amount of One ($1.00) Dollar an acre a year for acreage and unimproved areas until such time as public improvements are installed. . . .

''The determination of the services of public utilities to be installed as hereafter agreed upon by the petitioners and the City of Burlingame.''

It is conceded that these conditions could not be legally imposed and an officer of Mills Estate, Incorporated testified that that corporation knew that they could have no legal effect at the time that the petition was prepared. These conditions may be disregarded and the balance of the petition fully complies with the statute. The principle of *People* v. *City of Los Angeles, supra,* 9 Cal.App.2d 431, 440 is equally applicable to this situation, to requote: ''an attempt to do more than the law authorizes does not result in invalidity

of that which was authorized, but invalidates only that for which there was no statutory authority."

Section 2 of the annexation act provides: "Any such territory so proposed to be annexed to a municipal corporation must be contiguous thereto."

Two parcels of land were herein sought to be annexed to the city of Burlingame. Parcel No. 1 was a 100 foot strip of land running from the city limits of Burlingame northwest for 4,600 feet, then northeast for 7,800 feet and then southeast for 2,550 feet, rejoining the city limits at the termination thereof. Both the beginning and the end of the strip joined into the municipal corporation of Burlingame. Every other portion of the strip is immediately accessible to and from Burlingame's boundary without the necessity of crossing any unincorporated territory or any territory incorporated into another municipal corporation. Respondent's principal contention is that the annexed territory is not contiguous to Burlingame for the reason that the strip is a mere 100 feet wide, that the strip encloses an unincorporated area of 730 acres, and that Mills Estate, Incorporated sought to have the strip annexed to Burlingame so that the 730 acres could not be incorporated into any other municipal corporation. Contiguity does not depend on the extent of the property annexed and the question whether a municipal corporation should annex certain territory is political rather than judicial.

This question is ruled by *People* v. *City of Los Angeles*, 154 Cal. 220 [97 P. 311]. In that case the city of Los Angeles annexed a strip 16 miles in length and about half a mile in breadth. The court said (pp. 224-6):

"It will be observed from these provisions of the act that there is no limitation whatever expressed in the statute as to the extent or form of the territory to be annexed, and there is nothing from which any limitation can be implied. It has plainly left the matter of the annexation of any territory to a municipality to be determined by the people—the voters of the municipality and the territory proposed to be annexed. The legislature itself, in the very nature of things, could not lay down any rule as to the extent, shape, or character of territory which might be annexed to any given municipality. This must necessarily depend on very many reasons—questions of expediency and policy—affecting in different ways the various municipalities, and adjacent territory to be annexed. Hence it was doubtless concluded by the legislature in conferring a power of annexation in the general terms used in

the statute that the voters in a municipality could best determine whether its growth and conditions surrounding it called for an extension of its municipal limits by the increase of additional territory and its extent, and that the voters of the territory proposed to be annexed could with equal wisdom determine whether it was of advantage to them to become a part of the municipality to the extent and in the form as proposed. With the wisdom of their determination in the matter the courts cannot interfere. They only interfere where some substantial provision of the law has been violated or where fraud was perpetrated in the matter of the boundaries or the extent of the annexed district. That the extent and shape which the annexed territory shall take is a political, and not a judicial question, is clear from the conclusion announced by this court in the case of *People* v. *Town of Loyalton,* 147 Cal. 774, [82 P. 620]. . . . So, in the case of the annexation of territory, the power to fix its boundaries is conferred by the legislature directly upon the voters of the territory to be annexed and the annexing municipality, and no authority is conferred on any legislative body or judicial tribunal to review or interfere with their election upon the subject merely because of the form or extent of the territory annexed.''

The only limitation imposed by the statute in our case is that the annexed property must be contiguous to Burlingame. The ''horseshoe strip,'' as respondent calls it, is contiguous to, i. e., has a common boundary with, Burlingame for an aggregate distance of 200 feet and ''the extent and shape which annexed territory shall take is a political, and not a judicial question.''

Equally political, and not judicial, is the fact that 730 acres are cut off by the ''horseshoe strip'' from ever being incorporated into any city other than Burlingame (unless the 730 acres or some part of them should be incorporated into a newly formed municipality inside the ''horseshoe strip''). We quote again from *People* v. *City of Los Angeles, supra,* 154 Cal. 220, 227:

''It may be said, too, that the claim of plaintiff that the effect of the extension of the limits of Los Angeles along the westerly boundary of the city of Wilmington is to prevent the natural expansion of the latter city, is, in fact, more fanciful than real. San Pedro Bay naturally prevents expansion southerly, but there is nothing to prevent its expansion to the northward and eastward. It has still unlimited power of

extension in those directions. And while it is restricted in its extension to the westward, there is no law which prohibits another municipality when its present municipal necessities require it, from extending its boundaries by annexation because such extension may possibly prevent future expansion of another municipality. The contiguity of the boundaries does not affect the integrity of the present city of Wilmington, and that it might in the future, if not restricted by proximity to another city, extend in a given direction, is no reason why that other city, one of larger and increasing growth, whose practical and political necessities call for an extension of territory so as to bring it in touch with the seacoast, should be precluded from doing so merely because at some future time the natural extension of the smaller city might possibly trend in the direction of the annexed territory.''

The wisdom or expediency of the annexation of this territory is not a concern of the courts. We can go no further than to see that the existing laws are complied with. The Supreme Court said in *People* v. *City of Los Angeles, supra,* 154 Cal. 220, 228:

''If it be unwise legislation to grant the power to voters in the respective localities as broadly as it is conferred under the Annexation Act, appeal must be made to the legislature itself. That body has the constitutional power to confer the authority on them to do so and has done it, and whether it was wise or not, the courts cannot inquire into it.''

Later California cases are cited by respondent but it is needless to discuss them since they decide other questions and do not overrule *People* v. *City of Los Angeles, supra,* 154 Cal. 220. Much time is devoted by counsel to *Brown* v. *City Council of City of Long Beach* (Cal.App.), 258 P. 693. A hearing was granted in that case by the Supreme Court and if anything said in that opinion conflicts with *People* v. *City of Los Angeles, supra,* 154 Cal. 220, it cannot stand as an authority. Likewise cases from other jurisdictions cannot be considered which conflict in principle with the position taken by the Supreme Court of this state.

The motives of the city council of Burlingame (5 Cal.Jur. 640) or of Mills Estate, Incorporated (1 Cal.Jur. 336) cannot be inquired into so long as they proceeded according to established law.

The petition in the review case was dismissed pursuant to a stipulation that if the quo warranto action was decided in favor of the state that might be done. The reversal of the

judgment in the quo warranto action necessitates the reversal of the judgment of dismissal in the review case since it depends on that judgment.

Both judgments are reversed with directions to the trial court to amend its findings in the quo warranto case in accordance with the views expressed in this opinion and to enter judgment in that case in favor of defendants.

Nourse, P. J., and Goodell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 16, 1949. Carter, J., voted for a hearing.