In the Matter of the Annexation of **WEST LARAMIE** to the City of Laramie, Wyoming.

George **HENDERSON**, William Flieder, Samuel Evans, W. G. Overturf, Kenneth Lankford, Thomas Kern, Leonard Morton and Earl Gaskil, Appellants (Appellants below),

v.

**CITY OF LARAMIE**, Wyoming, Appellee.

No. 3750.

Supreme Court of Wyoming.

July 25, 1969.

William A. Riner, Cheyenne, for appellants.

Thomas S. Smith, City Atty., Laramie, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

The above-named individuals have appealed from a judgment entered by the District Court of Albany County affirming Enrolled Ordinance No. 268, adopted by the City Council of Laramie, Wyoming, whereby the city undertook to annex a part of a platted but unincorporated area known as West Laramie, lying immediately adjacent to the western boundary of the City of Laramie.

The case is presented here, as it was in the district court, upon a comprehensive and agreed statement of facts. The record shows that on May 5, 1886, Section 31, Township 16 North, Range 73 West of the

6th Principal Meridian, Albany County, Wyoming, was platted by the owner into 120 blocks and identified as West Laramie. As of June 1966 there were in excess of 360 landowners in the area and over the years some of the area has been developed as residential property and some by a few small commercial enterprises. Much of the area is undeveloped.

Although some effort was made prior to the within proceeding to obtain sanitary sewers and a potable water supply for West Laramie, those efforts had proved unsuccessful and each owner resorted mostly to the use of septic tanks and water wells ranging from 14 feet to some 56 feet in depth. By early summer of 1966 the health hazard created by the foregoing situation had become rather critical and a committee was formed to investigate and study the possibility of annexing the area to the city. Although we find it unnecessary for purposes here to go into the details of the committee's work, the record discloses that the committee did a thorough and conscientious job of bringing the matter to fruition. Its members devoted a great deal of time and effort to informing those to be affected by annexation of the advantages and disadvantages of the plan and in meeting and attempting to resolve the myriad of problems thrust upon them. For example, each and every landowner in West Laramie was contacted, where possible, and afforded an opportunity to express his views. Some were opposed because of a resulting increase in taxes due to the city levy and the contemplated costs of providing needed facilities. Others objected because of contemplated restrictions upon the use of the property, and particularly with respect to keeping horses upon the premises. Another complained that confusion would result in law enforcement and fire protection because of the irregularity of the boundaries proposed. It is noticeable, however, that none denied the need for adequate sewer and water facilities and the need for additional police and fire protection in the area to be annexed.

In any event, the efforts of the committee were culminated by the filing of a petition with the city on September 19, 1966, seeking to have 98 blocks of the 120 blocks in West Laramie annexed to the city. For reasons unimportant here, the effort failed. With respect to the petition, however, the city council did hold an informal hearing for the purpose of obtaining additional information and affording those persons interested an opportunity to express their views. Thereafter, the committee continued its efforts and on February 20, 1967, filed a further petition for annexation. This petition reduced the size of the area to be annexed from the 98 blocks previously proposed to 64 blocks and was signed by 61.11 percent of the owners of property therein, representing ownership of 64.42 percent of the area involved. Following this a further hearing was held by the city council and eventually the ordinance here involved was adopted annexing the area described in the petition dated February 20, 1967. As a result, the boundaries of the city in the area involved were irregular in shape.

It should also be noted that contrary to the usual annexation proceeding, the city was not the motivating force behind the proceeding. Neither has attack come from property owners within the boundaries of the city as fixed prior to the annexation nor from property owners in West Laramie whose property was not included. The attack comes from the appellants as property owners in the annexed area and is basically founded upon the proposition that the city should have included additional blocks in the area annexed.

The statutes prescribe three methods of procedure for initiating annexation proceedings. Section 15.1–56, W.S.1957, C. 1965, prescribes the procedure to be followed in a proceeding initiated by landowners of an area proposed to be annexed. In substance a petition must be signed by persons owning more than 50 percent of the land in the area to be annexed and by a majority of all landowners within the area. The petition, among other things, must

contain a legal description of the area; a request that such area be annexed; a description of the land owned by each signer; and a map of the area. Upon the filing of the petition with the clerk of the city or town to which the area is to be annexed, the matter is referred to the governing body and if minimum compliance with the statutes is shown, a resolution to that effect shall be adopted fixing, among other things, a time and place for public hearing of the petition.

Section 15.1–57, W.S.1957, C.1965, prescribes a procedure whereby the governing body of the city or town may of its own volition initiate the proceeding by resolution and proceed with a hearing upon the matter if minimum compliance as prescribed by § 15.1–55, W.S.1957, C.1965, is shown. The minimum compliance referred to in both sections is as follows:

"Before any territory is eligible for annexation, the governing body of any city or town at a hearing as provided in section 15.1–58 shall find:

"(a) That an annexation of the area is for the protection of the health, safety, and welfare of the persons residing in the area and in the city or town.

"(b) That the urban development of the area sought to be annexed would constitute a natural, geographical, economical and social part of the annexing city or town.

"(c) That the area sought to be annexed is a logical and feasible addition to the annexing city or town and that the extension of basic services, such as water and sewer systems, police and fire protection, and other services customarily available to residents of the city or town can reasonably be furnished to the area proposed to be annexed.

"(d) That the area sought to be annexed is contiguous with or adjacent to the annexing city or town. Contiguity will not be adversely affected by the existence of a platted street or alley, a public or private right-of-way, a public or private transportation right-of-way, a lake, stream, reservoir or other natural or artificial waterway located between the annexing city or town and the land sought to be annexed."

A third method prescribed by § 15.1–60, W.S.1957, C.1965, insofar as landowners are concerned, permits annexation without the necessity of a resolution or public hearing in the event the owner or owners of all of the area sought to be annexed petition the city or town to annex such area.

Following the hearing, where necessary, in a proceeding initiated by petition or in a proceeding initiated by the city or town itself, § 15.1–59, W.S.1957, C.1965, provides that if the governing body finds that the conditions prescribed by § 15.1–55 exist and the required procedures met, an ordinance shall be adopted annexing the territory involved.

In the instant proceeding the city council, after hearing, found and determined that the area described in the petition met the conditions imposed, and although the ordinance also recites that the city council "desires to initiate proceedings to annex said area on its own behalf as well as upon the petitions submitted," the boundaries, as noted above, conformed in all respects to the blocks in the area described by the petition dated February 20, 1967.

The appellants in their attack upon the ordinance make the following major contentions:

"A. That the city council of the City of Laramie could not properly make the findings required to be made by Section 15.1–55, W.S.1957, (1965 Compilation) as to the land included in the ordinance and thereby annexed to the City of Laramie; and

"B. That, conceding for purposes of argument that the findings required by Section 15.1–55 could properly be made the action of the city council in annexing only the land covered by the ordinance was arbitrary, capricious and unreasonable."

The same contentions were made in the appeal to the district court, and in this

connection and in support of the judgment rendered we have been favored with a comprehensive and well-reasoned memorandum opinion of the trial judge disclosing the basis upon which he arrived at his ultimate conclusion.

■ With respect to contention A, it does not directly assert that there was not sufficient evidence from which the city council could find, as it did, that the prerequisites prescribed in § 15.1–55 set forth above existed. In other words, it seems to be conceded, as the trial court determined and with which we agree, that there was an abundance of substantial evidence from which the finding could be made. It is nevertheless argued by appellants that the city council was duty bound to consider the problems relating to the public health, safety, and welfare of all of West Laramie, which incidentally we think it did, and not having included certain lands in the annexed area that were also generating and contributing to such problems it could not be found that the area annexed constituted a "natural" part of the City of Laramie. The argument is somewhat ingenious but we think the term "natural" was not used in that sense and no authority is cited to support the contention. In the first place, all or any part of West Laramie is declared by statute to be "potentially an urban area." Section 15.1–64, W.S.1957, C. 1965. The record also shows that ready access from the area to the city exists; and, as the trial judge concluded, West Laramie "has been integrated except for government" with the city ever since West Laramie was developed in a significant way. The fact that the city council, in its wisdom, declined to include additional area does not detract from the naturalness of the area annexed. Consequently, and aside from the question of arbitrary, capricious, and unreasonable action on the part of the city council, we find no merit in appellants' contention A.

With respect to contention B, we should first mention that § 15.1–62 grants the right of appeal to the district court by an aggrieved landowner directly affected by the proceeding and, among other things, charging that the action of the governing body of a city or town was arbitrary, capricious, or an abuse of discretion. The statute expresses the rule generally recognized by the courts. 2 McQuillin, Municipal Corporations, § 7.40, p. 490 (1966 Rev. Ed.).

As we have noted, contention B is predicated upon the proposition that the city council's action was arbitrary for the reason that it failed to include area in West Laramie which also had been developed as residential property or for commercial use in a manner comparable to some of the property that was included in the annexation and with the result that the boundary lines were irregular and established without governing principle.

■ As a general proposition, the size and shape of the area to be annexed is a political question. 2 McQuillin, supra, § 7.-18c, p. 353. Under our statute the only requirement with respect to the scope and extent of the area to be annexed is that it must be contiguous to the annexing city or town. That the area involved was contiguous is undisputed. In an annexation proceeding the courts are not concerned with the wisdom or expediency of altering the boundaries of a city or town by annexation. City of Burlingame v. San Mateo County, 90 Cal.App.2d 705, 203 P.2d 807, 811; Hopperton v. City of Covington, Ky. App., 415 S.W.2d 381, 384. It is also to be observed that the reasonableness of the action taken by the governing body, which incidentally counsel for appellants treats as synonymous with arbitrary action, is presumed and the burden is on the landowner attacking the ordinance on that basis clearly to show by substantial evidence that such action was unreasonable. 2 McQuillin, supra, § 7.23, pp. 388–390.

In final analysis, determination of the question of arbitrary or unreasonable action by the city council is largely factual and dependent upon the facts and circumstances presented in each proceeding, keeping in mind that each relevant factor is to

be considered and weighed along with other relevant factors "and with no single factor a legal absolute in the sense that it is conclusive." City of Ash Grove v. Davis, Mo.App., 418 S.W.2d 194, 206.

The term "arbitrary" has been variously defined, but in general is defined as willful and unreasoning action, without consideration and regard for the facts and circumstances presented, and without adequate determining principle. Wagoner v. City of Arlington, Tex.Civ.App., 345 S.W.2d 759, 763, ref. n. r. e.; Miller v. City of Tacoma, 61 Wash.2d 374, 378 P.2d 464, 474; Black's Law Dictionary, p. 134 (4th Ed.). In the Washington case last cited the court also pointed out that a finding of fact unsupported by evidence is arbitrary and will not support an order based thereon, and then said:

"* * * When there is evidence in the record, however, and

" 'Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. [Citing authorities.].' * * *"

Directing our attention to the specific factors asserted by appellants to establish arbitrary action, we first turn to the charge that the boundaries were gerrymandered in order not to be upset by too many objecting owners. In other words, it is claimed that the irregular boundaries of the annexed area came about as the result of a "sinister or unlawful purpose," Black's Law Dictionary, p. 816 (4th Ed.), on the part of the committee and the city council. Although the city concedes that objections voiced by some of the landowners to have their lands included in the annexed area did enter into the action taken by the city, it denies any wrongdoing and states in its brief that this was "due to the endeavors of the annexation committee to avoid forcing annexation upon those persons who did not desire to be annexed, particularly where the committee could do so without creating an isolated, unannexed area completely surrounded by an annexed area."

Keeping in mind, as mentioned above, that neither general law nor our own statute requires that an area proposed for annexation to a city or town be of any particular size or shape, we can hardly be expected to hold that the mere showing of irregular boundaries vitiates the proceeding. The true test is whether or not the action taken was shown to be arbitrary or unreasonable. Also, as pointed out above, solution to the problem is primarily a question of fact and we are not persuaded that appellants have met their burden in that respect. For example, it is not shown that had the committee and the city council included additional lands in order to straighten the boundary lines of the area annexed there would have been lacking the necessary consent of the number of landowners sufficient to meet the statutory requirement. Additionally, the record supports the contention of the city that the boundary lines as fixed came about only after extensive effort had been made to obtain the cooperation of as many landowners as possible to find a solution to the critical problem of advancing the health, safety, and welfare of people residing in West Laramie. Even assuming that the desire of the committee and the city council to avoid controversy was a dominant factor in fixing the boundaries, it would not be conclusive. People ex rel. Strong v. City of Whittier, 133 Cal.App. 316, 24 P.2d 219. Furthermore, the owners of land not included in the annexation are free at any time, under methods one and three above described, to petition the city to have their lands annexed. In passing upon this phase of the case, the trial judge remarked:

"It is true that it would have been a nicer arrangement if those portions of West Laramie not included in the annexation had been incorporated but the City Council could well have considered that it was preferable to add what could be included at this time, as did the promoters rather than fight an improbable larger annexation. * * *"

and then went on to say, "It was an explainable and understandable compromise." We are inclined to agree, and for such reason we cannot hold as a matter of law that this factor, of itself, established arbitrary action on the part of the city council.

It is further claimed that as a result of the irregular boundaries the city council discriminated against adjoining landowners similarly situated to those in the area annexed. We have previously touched upon this contention and perhaps sufficient has been said to dispose of it. We would again remind, however, that it is not the adjoining landowners who are complaining. Just how appellants are being discriminated against is not argued or apparent. In order to demonstrate the claimed discrimination it is pointed out, for example, that the annexed area did not include filling stations across the street from filling stations included in the annexed area. Undoubtedly, such was a factor to be considered. However, it was largely predicated upon the fact the nonincluded stations would not be subjected to the city gasoline tax of one cent per gallon, and whatever weight that might have been entitled to at the time has now been dissipated. The legislature in the last session has equalized such tax on a countywide basis. Chapter 197, S.L. of Wyoming, 1969 (§§ 39–204.5—39–204.8, W.S.1957, 1969 Cum.Supp.). With respect to residential property adjacent to but not included in the annexed area, it also was a factor to be considered. Nevertheless, as we have indicated, other factors were to be considered in resolving the question, and inasmuch as the owners of those lands are not complaining it would appear that the city council might well have reasoned that even though such owners were content to subject themselves to the hazards existing for lack of the services and facilities offered by the annexation, this was no reason to deprive their neighbors of such facilities, which after all was the motivating force behind the annexation.

In advancing these matters, the appellants rely almost entirely upon the case of Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235, wherein it was said to be unreasonable and discriminatory to fix boundary lines in such a manner as to exclude and include property in the same vicinity and to exclude property within the proposed boundary lines. Taken literally, the pronouncement enunciates a broad rule. In a later case, however, Hider v. Town of Lake Providence, La.App., 91 So.2d 387, decided by the Court of Appeals of Louisiana, and in which certiorari to the supreme court was denied, it was pointed out the holding in Pyle was based on the failure to show valid reasons for excluding lands within the vicinity of the annexed area which resulted in jagged and irregular boundaries, and the court then went on to say that where the boundaries were based upon "negotiations and conferences between the owners and town officials," 91 So.2d at 392, the ordinance was not invalidated by such fact and the Pyle case had no application. See also Dupre v. Mayor and Board of Aldermen of City of Houma, La.App., 126 So.2d 637. The rationale of the later Louisiana cases is not without some significance when applied to the facts and circumstances presented here.

In any event, as indicated by the general authorities heretofore cited, we think the broad pronouncement in Pyle has not met with general acceptance. In Smalley v. City of Fort Smith, 239 Ark. 39, 386 S.W.2d 944, 946, the failure to include other developed area near the annexed area was not fatal because there was "no such statutory requirement." In Hopperton v. City of Covington, Ky.App., 415 S.W.2d 381, 383, the court approved an annexation in the shape of an "hourglass," commenting that "mere irregularity in its shape does not vitiate" the proceedings. In City of Burlingame v. San Mateo County, 90 Cal.App.2d 705, 203 P.2d 807, the court approved an annexation of a strip of land one-hundred feet wide in the shape of a "horseshoe" which excluded some 730 acres of land lying between the inside boundary of the strip and the boundary of

the annexing city. Thus, under the prevailing view, the mere "irregularity" of the boundary of an annexed area does not of itself vitiate the proceeding. It is required, of course, that the boundaries be definitely fixed by a legal description, and compliance with that requirement is here shown.

In summation, we are persuaded the trial court gave full and careful consideration to the myriad of facts and circumstances presented with due regard to the legal principles involved upon review, and we cannot hold it erred in determining that the city council by adoption of the ordinance had not exceeded its powers or that its actions were not arbitrary, capricious, or unreasonable. The judgment is affirmed.

Affirmed.