THE PEOPLE ex rel. CHARLES E. PAGANINI, Respondent, v. TOWN OF CORTE MADERA (a Municipal Corporation) et al., Appellants.

John B. Ehlen for Appellants.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, and Freitas, Keating & Freitas for Respondent.

GOODELL, J.—This is an appeal from a judgment in quo warranto, annulling proceedings for the annexation of certain territory.

On June 3, 1946, pursuant to the "Annexation of Unin-

habited Territory Act of 1939'' (Stats. 1939, p. 1567; 2 Deering's Gen. Laws 1944, Act 5162), the council of the town of Corte Madera by resolution initiated proceedings to annex three separate parcels of uninhabited territory, each of which was contiguous to the town as then bounded, but no one of which was contiguous to either of the others. One of these parcels, containing 15 acres, is owned entirely by Carton Label Lithograph Company, of which the relator is president. August 5, 1946 was fixed as the time when the owners of the property proposed to be annexed could appear and protest. At that time a written protest was presented by the relator on behalf of his company.

No protests were filed as to the other two parcels, and the council at once adopted ordinance 142 approving their annexation. The council deferred action respecting the company's property (at its request) and continued the matter from time to time until April 7, 1947, when they adopted ordinance 147 approving its annexation, which action precipitated this litigation.

The complaint alleges the foregoing facts, and further, that the 15-acre parcel differs from the other two in certain respects. By reference it incorporates a copy of ordinance 147, and it alleges, also, that a copy thereof had been filed with the Secretary of State. It concludes with the allegation that the purported annexation of the company's property ''was null and void, but that the defendants have nevertheless unlawfully usurped and exercised the franchise of municipal government'' in matters affecting it. The prayer is for a nullification of the proceedings.

Appellants filed a general demurrer which was overruled, with 15 days allowed for answer. Notice of overruling was given but appellants stood on their demurrer and declined to answer. The judgment which followed recited the default and nullified the proceedings.

This court had occasion in *People ex rel. Stephenson* v. *Hayden*, 9 Cal.App.2d 312 [48 P.2d 314] to consider the question of pleading in quo warranto cases. We held there that a complaint which pleaded in general terms that defendant was ''usurping, intruding into, and unlawfully holding and exercising the office of Supervisor . . .'' was sufficient.

''It was a peculiarity of both the common-law writ of quo warranto and information in the nature of quo warranto that the ordinary rules of pleading were reversed and the state

was bound to show nothing'' (22 Cal.Jur., p. 220). It seems to be settled law in this state that a complaint in quo warranto may be drawn in either of two ways, i. e., by charging in general terms that an office or franchise is being usurped, ''or by alleging specific grounds or defects relied upon to show usurpation'' (22 Cal.Jur. 220-1).

It appears that respondents elected to proceed on the latter theory, for in their complaint they set forth the steps taken by the council and then allege the noncontiguity of the three parcels. In briefing the case their principal point of attack on the proceedings and in support of the judgment nullifying them, is that the three parcels are separated. Accordingly we shall deal with the case as one where specific objections were raised by the complaint (see *People* v. *Los Angeles,* 133 Cal. 338, 340-1 [65 P. 749]).

Appellants attack the complaint because of the weakness of the allegation that a written protest was filed, without further allegations to show that it measured up to the requirements of the act.

Section 6 of the act provides that ''At any time not later than the hour set for hearing objections to the proposed annexation, any owner of property within the territory proposed to be annexed may file written protest against the proposed annexation. Such protest shall state the name or names of the owner or owners of the property affected thereby and the description and area of such property in general terms. At the time set for hearing protests the legislative body of such municipal corporation shall proceed to hear and pass upon all protests so made and if it be found that protest is made by the owner or owners of one-half of the value of the territory proposed to be annexed according to the last equalized assessment roll, no further proceedings shall be taken in connection with the proposed annexation.''

Section 7 reads: ''If it be found that protest is not made by the owner or owners last above mentioned, the legislative body of such municipal corporation must by ordinance approve or disapprove such annexation.''

Appellants cite *American Distilling Co.* v. *City Council of City of Sausalito,* 34 Cal.2d 660, 665 [213 P.2d 704], a case arising out of the same act of 1939, where the court says: ''If the protests were insufficient the city council was then authorized and required by section 7 to enact an ordinance either approving or disapproving the annexation.''

Appellants argue that the bare allegation of the filing of a

written protest is meaningless in view, (1st) of the specifications of section 6 respecting the qualifications of the protestants, and, (2d) of the finding by the council that the protest was insufficient. Attached as an exhibit to the complaint and made a part of it by apt words of reference, is a copy of ordinance 147 which approved the annexation of the relator's property. That ordinance contains the finding that the protest was insufficient. Therefrom it is argued that the face of the complaint shows the infirmity of the relator's position. Section 6 of the act points the way to a blocking of annexation by mere protests or remonstrances provided they are voiced by landowners who can qualify as to valuation of holdings, under the requirements of that section. It does not follow, however, that such machinery is exclusive or that it is a prerequisite to an attack on the proceedings by quo warranto, which is the appropriate remedy for an attack on the proceedings as a whole after annexation (22 Cal.Jur. pp. 210-11; American Distilling Co. case, *supra,* p. 666). If the intent of the act is that ''territory'' can be annexed only if and when it is in one piece, and an attempt is made to annex several noncontiguous pieces, that ground must be available in a quo warranto proceeding. It is the respondents' chief ground herein, and we think it is well taken.

Section 2 of the act provides that ''Any such territory so proposed to be annexed to a municipal corporation must be contiguous thereto.'' That is all. Appellants argue that this means simply that the territory (whether in one or more pieces) must touch or abut onto the existent municipality, and that each of these three separate parcels does so. Appellants argue, further, that courts cannot write into a statute language which the Legislature did not see fit to write therein and that, if we construed section 2 as prohibiting the annexation of separated parcels we would be doing just that.

In attempting to reach the true meaning of a given piece of legislation courts are permitted to compare it with other legislation dealing with the same subject, or which, in other words, is *in pari materia.*

''Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed'' (23 Cal.Jur. 778). This brings us naturally to a comparison of this act with other annexation statutes.

The act of 1913 (Stats. 1913, p. 587) provides for annexation of inhabited territory upon petition of electors in territory proposed to be annexed, which territory may be either: (a) one body (§§ 2 to 4) or (b) two or more bodies, which must be submitted as separate propositions. (§ 6.) (*People v. City of Lemoore*, 37 Cal.App. 79, 80 [174 P. 93]).

Section 2 of the 1913 act uses the word "territory," just as does section 2 of the 1939 act. Section 6, however, of the 1913 act provides that "Nothing in this act contained shall be construed to prevent the submission to the electors of any municipal corporation as separate propositions to be voted upon separately at one and the same election therein, of the questions of the annexation by any such municipal corporation of *two or more bodies of outside territory, each of which is contiguous to such municipal corporation, but no one of which is contiguous to any of the others . . .*" (Emphasis added.)

When, in 1939, the Legislature came to draft the act now involved, it had before it a model which had been in effect for 25 years. The fact that the 1913 act deals with inhabited land and elections, while the 1939 act deals with *un*inhabited land and no elections, would not, in itself, be a point of differentiation. ■ The language of the 1913 act, which made it perfectly clear that *noncontiguous bodies were nevertheless annexable,* was "ready-made," and in 1939 all the Legislature had to do was to appropriate from the 1913 law so much of its language as fitted the 1939 act. This was not done, and we think it was indeed "significant" (23 Cal.Jur. 778) of an intent to exclude from the 1939 act the annexation of areas noncontiguous to one another. The omission of that or similar language points to a construction that when the Legislature in 1939 used the word "territory" it meant only a unified, solid, area, lying contiguous to one of the boundaries of the municipality.

Incidentally, it might be remarked that the language of section 6 of the 1913 act permitting the annexation of separated bodies of land is not to be found in any other piece of annexation legislation.

There is another reason why, in our opinion, separated parcels were not contemplated. Section 5 of the 1939 act provides for the publication of a copy of the resolution giving notice of the intention to annex, in a newspaper published in the town, "and if there be no such newspaper . . . a copy of the resolution shall be posted not less than ten days before the

hearing in at least three conspicuous places within the territory proposed to be annexed.''

If, as in this case, three separated bodies of outside ''territory'' are proposed for annexation, and as a jurisdictional prerequisite there must be notices posted in at least three conspicuous places, where do they go? Should one be posted on each of the three separated bodies of land? Should all three be posted on one of them, and if so, on which one? In other words, does not the language ''within the territory'' naturally mean within one undivided area? These questions are not satisfactorily answered by appellants.

The same considerations apply with equal force to section 3 of the act, under which the annexation proceedings may be initiated by written petition ''containing a description of the uninhabitated territory sought to be included in such municipal corporation, signed by the owners of not less than one-fourth of the area of the land in such territory etc.'' If parcels noncontiguous to one another may be included in the ''uninhabitated territory'' sought to be annexed, may the owners of parcel A file a petition asking that parcel A, together with parcels B and C not contiguous to parcel A be annexed in one proceeding? The act cannot reasonably be construed to give it such a meaning.

Appellants cite the recent City of Burlingame case [*City of Burlingame* v. *San Mateo County*], 90 Cal.App.2d 705 [203 P.2d 807], but that case is not in point because it concerned a strip of land 100 feet wide in the form, roughly, of a horseshoe or loop. It appears (p. 709) that ''Both the beginning and the end of the strip joined into the municipal corporation of Burlingame. Every other portion of the strip is immediately accessible to and from Burlingame's boundary without the necessity of crossing any unincorporated territory or any territory incorporated into another municipal corporation.'' Thus there was no question, as there is here, of separated parcels.

The main question in this case is whether the act of 1939 contemplates the annexation of separated parcels in one proceeding. Clearly the municipality could annex three separated parcels by three separate proceedings, but if that were done the jurisdictional steps (publication or posting and opportunity to protest) would be different in each instance and would be addressed to different ''territory.'' The point which appellants stress so strongly, that the complaint did

not show the form or content of relator's protest and the fact that the council found such protest to be insufficient does not reach, and therefore does not influence, the main point that the three parcels are noncontiguous. Admittedly they do not touch one another. The demurrer admits that, the default does likewise, and the decree contains the finding that all the allegations of the complaint are true—including, of course, the allegation of noncontiguity. The provisions of sections 6 and 7 of the 1939 act respecting written protests is only *one* method of attacking the proceedings. It is the one effective way of killing the proposed annexation at the very threshold, within the statutory framework of the proceedings *before the council.* ▉ But if the attempted annexation goes beyond the statute in such a basic and fundamental respect as noncontiguity, certainly a landowner is not foreclosed from attacking the proceedings by quo warranto whether he protested before the council effectively, ineffectively, or not at all, and irrespective of the conclusiveness of the council's finding of an insufficient protest.

For the reasons already given we are satisfied that the demurrer was properly overruled.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.