[Civ. No. 15302.   First Dist., Div. One.   Dec. 23, 1952.]

THE PEOPLE ex rel. EDWARD A. FORDE et al., Appellants, v. TOWN OF CORTE MADERA et al., Respondents.

Edmund G. Brown, Attorney General, Lee Chamberlain, Deputy Attorney General, and Delger Trowbridge for Appellants.

John B. Ehlen for Respondents.

PETERS, P. J.—This action in *quo warranto* was instituted by the attorney general on the relation of Edward and Lucille Forde, the real parties in interest, to have set aside and declared invalid a certain annexation proceeding of the town of Corte Madera in Marin County, which annexation included .67 of an acre owned by the Fordes. It appears that the town of Larkspur, which on its southerly and easterly boundaries abuts Corte Madera, annexed some land adjoining that annexed by Corte Madera, and including the strip in which the Fordes' property is located. The basic question presented is whether the Corte Madera or the Larkspur annexation shall prevail. The trial court concluded that the Corte Madera annexation was valid and prior, and, therefore, superior to that of Larkspur, and entered its judgment denying the plaintiffs any relief. From that judgment the plaintiffs appeal.

The map, which is made a part of this opinion, discloses most of the factual situation. Corte Madera and Larkspur are sixth class cities in Marin County. The two towns have a common boundary towards the north and northwest of Corte Madera. The Fordes, the appellants, own .67 acres in the corridor which runs east and west and is marked part of Parcel A-1 on the map. The Fordes' property is marked with

diagonal lines. A-1 also includes a long corridor along the easterly boundary of Corte Madera running north and south. The owners of the Fifer-Moore tract, consisting of 37.85 acres, and designated as Parcel A-2 on the map, desired to annex their property to Corte Madera. The long right-angled corridor designated A-1 is connected to A-2 by Parcel A-3, which is simply that part of the roadbed of Highway 101 that touches A-2. The long, narrow corridor marked Parcel A-1 that runs north and south is occupied by the Northwestern

Pacific Railroad Company's main line, and is used solely for railroad purposes. At the south of the map that right of way is within the town limits of Corte Madera, but prior to the annexation proceedings the westerly boundary of the right of way was the easterly boundary of Corte Madera.

On August 28, 1950, the sole owners of A-2, being the owners of more than one-fourth of the area sought to be annexed by area and assessed value, petitioned Corte Madera to annex A-1, A-2 and A-3. This petition was filed under the ''Annexation of Uninhabited Territory Act of 1939,'' Government Code, sections 35300 to 35326. It is conceded that the area is uninhabited within the meaning of that statute. On October 2, 1950, the Fordes appeared before the city council of Corte Madera and protested the annexation, but their protests were overruled. (See Gov. Code, § 35313.) On October 9, 1950, an annexation ordinance was introduced which was passed by the council October 16, 1950. A copy of this ordinance was filed with the Secretary of State on November 27, 1950. (See Gov. Code, § 35316.) It will be noted that if Corte Madera desired to annex the Fifer-Moore tract, it was necessary to go around certain areas already annexed to Larkspur. In 1944 Larkspur had annexed a long corridor extending westerly from the town of Larkspur and marked on the map ''Extension of William Avenue.'' It is not now developed as a street. This constitutes part of the north boundary of Corte Madera. In 1950, Larkspur had annexed ''Parcel B-1,'' so that the Fifer-Moore tract was cut off from Corte Madera unless a corridor of the type of A-1 and the portion of the highway (A-3), were also annexed.

In the meantime, Larkspur had also commenced an annexation proceeding. On September 5, 1950, eight days after the institution of the Corte Madera proceedings, a petition under the Uninhabited Territory Act was filed to annex to Larkspur the area marked ''B-2'' on the map, which includes that portion of the corridor in which the Fordes' property is located. It was necessary for Larkspur to annex this corridor, for otherwise, because of the Corte Madera annexation, B-2 would not be contiguous to Larkspur. The Larkspur annexation ordinance was passed October 10, 1950, and was filed with the Secretary of State on November 13, 1950. It is this inclusion of the easterly-westerly leg of the A-1 corridor in both annexation proceedings that has led to the present controversy. No proceeding of any kind has ever been brought by Corte Madera or anyone else to contest the validity of the

Larkspur annexation ordinance. The evidence shows that Corte Madera is closer to the disputed area by road than is Larkspur. The trial court held that the Corte Madera annexation, having been started prior to that of Larkspur, prevailed over the Larkspur annexation. It is this holding that appellants challenge on this appeal.

One of the major contentions of appellants is that the present proceeding constitutes an attack on the Larkspur annexation in violation of section 349½ of the Code of Civil Procedure which provides: "The validity of any proceedings for the annexation of territory to a municipal corporation, or for the consolidation of municipal corporations, shall not be contested in any action unless such action shall have been brought within three months after the completion of such proceedings, or, in case such proceedings are completed prior to the time that this act takes effect, then within three months after this act shall have become effective."

Admittedly, this statute is applicable to *quo warranto* proceedings, and would warrant, if applicable to the problem here involved, the relief prayed for by appellants. (*People* v. *City of Los Angeles,* 93 Cal.App. 532 [269 P. 934].) Respondents do not challenge this, but contend that the section cannot be used to perfect a subsequent annexation in derogation of a valid prior annexation.

There can be no doubt that the Uninhabited Territory Act, under which both annexations proceeded, grants priority to Corte Madera as the annexer prior in time. The sections of the Government Code so providing are sections 35308 and 35309. They read as follows:

Section 35308: "When a petition for the annexation of any territory to a city has been received by its legislative body a petition asking for the annexation of any of the territory described in the petition shall not be presented to the legislative body of any other city until an ordinance disapproving such annexation becomes effective."

Section 35309: "After one legislative body has received a petition, no other legislative body shall take any action for the annexation of any part of the territory described in the petition, until the ordinance of the first city disapproving annexation becomes effective."

It is the theory of the respondents, found to be correct by the trial court, that, where the first annexation is completed, these sections constitute a positive prohibition of subsequent proceedings; that such subsequent proceedings are

an absolute nullity and are void; that no life can be breathed into such void subsequent proceedings by the failure to contest them; and that section 349½ of the Code of Civil Procedure does not accomplish this result. With this theory we agree.

This result follows because the absence of a prior annexation is, by the law, made an indispensable condition precedent to the filing of a subsequent proceeding. The existence of a prior proceeding renders the subsequent one void, under the well settled principle that an act is void if specifically prohibited by statute. (*Smith* v. *Bach,* 183 Cal. 259 [191 P. 14]; *Bourke* v. *Frisk,* 92 Cal.App.2d 23 [206 P.2d 407]; *Herkner* v. *Rubin,* 126 Cal.App. 677 [14 P.2d 1043].)

The rule conferring priority on the first city to file is part of the public policy of the state. It was the rule at common law. (*People* v. *City of Monterey Park,* 40 Cal.App. 715 [181 P. 825].) In that case an annexation proceeding was first instituted and a later attempt was made to separately incorporate the area. The court held that section 7 of the Annexation Act of 1913 as amended in 1915 (Stats. 1915, ch. 149 at p. 309) conferring priority as between two conflicting annexation proceedings on the first to be instituted was declaratory of existing common law, and that the same rule applied where the conflict was between an annexation proceeding and an incorporation proceeding even in the absence of a statute.

It should be pointed out that section 7 of the Act of 1913, in less wordy form, is now section 35115 of the Government Code governing annexation of inhabited territories. The two sections here involved—sections 35308 and 35309—relate to annexation of uninhabited territories. Thus, at common law, and pursuant to a consistent statutory scheme, priority is granted to that city first instituting proceedings. In *City of Burlingame* v. *County of San Mateo,* 90 Cal.App.2d 705 [203 P.2d 807], the court declared that this rule of priority under the very act here involved operates so that "the first proceeding in point of time excludes the jurisdiction of the later one." (P. 706.)

But, say appellants, conceding that the proceedings instituted by Corte Madera had priority, nevertheless section 349½ of the Code of Civil Procedure operates to confer priority on Larkspur, because the Larkspur proceedings were not contested within three months after their completion. In support of this somewhat startling concept that a proceeding invalid when instituted, a proceeding that was then void

and in violation of law, becomes not only valid but takes priority over a proceeding valid when instituted and entitled by law to priority, appellants cite many cases that hold that invalid acts, even those infected with a jurisdictional defect, are subject to being perfected by the passage of a limitation period, or by the application of a general or special validating act. *Tannhauser* v. *Adams,* 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015], is typical There, a one-year no contest upon the validity of a tax sale proceedings provision was held to cut off the title of an owner, out of possession, even though there had been a failure to comply with the requirement of service by registered mail. (See, also, *City of Fairfield* v. *Hutcheon,* 33 Cal.2d 475 [202 P.2d 745].) Particular reliance is placed upon the case of *Sacramento M. U. Dist.* v. *All Parties,* 6 Cal.2d 197 [57 P.2d 506], where the court held that a provision of the Municipal Utility District Act (2 Deering's Gen. Laws, Act 6393) substantially identical to section 349½ of the Code of Civil Procedure prevented, after three months, an attack upon the inclusion of a water district in a municipal utility district. Particular reliance is placed on the following language (p. 200) : ''Section 6e provides in substance that the validity of any proceedings for the annexation of any county water district to a municipal utility district shall not be contested in any action not brought within three months of such proceedings. . Such limitation as to the time for commencing an action to test the validity of the annexation proceedings is not subject to attack on the ground that it is unconstitutional. [Citing cases.] Even if section 6e be regarded as a curative act, it will cure all defects and proceedings not in violation of the Constitution.''

That language seems pretty broad, but it was not directed at the effect of a statute of limitations provision upon a conflict between a prior valid and a subsequent invalid annexation proceeding. The case did not, in fact, involve the unauthorized extension of the boundaries of a utility district. The actual holding of the court was that there was no vice in the extension of the district's boundaries, and, in truth, not even a procedural defect that might be cured by section 6e.

Appellants also rely upon *Miller & Lux Inc.* v. *Secara,* 193 Cal. 755 [227 P. 171], where the court, in reference to a problem completely different from the one here involved, stated (p. 765) : ''We agree with counsel for appellant that a total lack of jurisdiction due to absence of notice sufficient to constitute due process of law cannot be cured by a curative

act or by a curative provision in the statute, but we see no reason why such a defect may not be cured, in effect, by a statute of limitations, provided the latter is not unreasonable and is therefore valid."

Curative legislation, however, cannot be used as against a prior valid proceeding to breathe life into a subsequent proceeding which, from its very inception, was, as against the prior proceeding, void and violative of the state's statutory law. None of the appellants' cases, except one, even hints at the proposition that a statute of limitations provision can breathe life into a void later instituted proceeding as against a valid prior instituted proceeding. The one case that contains some language that supports appellants' position is *Hunt* v. *Atkinson*, (Tex.Com.App.) 17 S.W.2d 780. That case must be read in conjunction with an earlier appeal in the same proceeding found in 12 S.W.2d 142. That case did involve competing annexation proceedings, and the court did hold that the subsequent proceeding prevailed over a proceeding instituted four days prior to the subsequent one by reason of a general validating statute. However, a reading of the opinions on both appeals, particularly the earlier opinion, demonstrates that the Texas court gave no consideration at all to the rights, if any, of the city that had first started proceedings. The court was only concerned with the results that followed because the city of Houston had failed to follow, precisely, the procedure set up in the annexation statute. The case is not controlling nor convincing on the problem here presented.

Upon general and fundamental principles, we are convinced that the curative provisions of section 349½ of the Code of Civil Procedure will cure any failure to comply with the procedural provisions of the annexation statute, but we are equally convinced that such section cannot operate, as against a prior valid proceeding, so as to vitalize a completely invalid subsequent proceeding. A curative statute may operate to cure any procedural irregularity—even one going to jurisdiction—but it cannot operate to breathe life into a proceeding, the very filing of which is prohibited by statute. As the United States Supreme Court declared in *Turpin* v. *Lemon*, 187 U.S. 51, 57 [23 S.Ct. 20, 47 L.Ed. 70], quoting from Cooley, "Curative laws may heal irregularities in action, but they cannot cure want of authority to act at all." In the instant case, the subsequent proceedings were void in their inception. The prior proceeding was entitled to priority under

the law. No statute of limitations nor so-called curative statute can breathe not only life, but priority, into a subsequent annexation proceeding. To so hold would be to violate the statutory policy and common law of this state.

Appellants next attack the Corte Madera annexation, contending that, on the merits, that annexation was illegal. They urge that, under the facts, there was neither physical nor substantial contiguity as required by the statutes, and that the Corte Madera annexation was therefore invalid.

■ There can be no doubt that only an area that is contiguous to the existing town may be annexed under the Uninhabited Territory Act. (See Gov. Code, § 35302.) This is conceded.

The argument that physical contiguity does not exist is predicated upon the contention that the railroad right of way and the portion of Highway 101 designated as Parcel A-3, separate Parcel A-2 from Corte Madera, with the legal result that physical contiguity does not exist. Appellants base this argument upon the claimed authority of prior case law and upon the terms of the relevant statutes.

The contention that prior case law has determined that, where a railroad right of way or public highway separates a city from the area sought to be annexed, such area is not physically contiguous to the city, is based primarily on that part of the decision of *People* v. *City of Lemoore,* 37 Cal.App. 79 [174 P. 93], that has frequently been distinguished and disapproved. In that case the city of Lemoore sought to annex nine parcels of land in one single election. Considered separately, some of the nine parcels were inhabited and some uninhabited. The court properly held that this constituted an attempt to annex land constituting more than ''one body'' of land as those words are used in the annexation statutes. Parcel 1 (see map, p. 83 of opinion) was completely separated from all other parcels, except that it was connected to Parcel 2 by a strip of the county road 1,650 feet long and 20 feet wide. The actual holding is that Parcel 1 and Parcel 2 are separate ''bodies'' of land and therefore, under then existing law, their annexation had to be submitted separately to the voters. In so holding, the appellate court stated (p. 84): ''If we confine our attention to parcels Nos. 1 and 2, it would be a strained construction to hold that they were made a continuous and contiguous body by the attempt to join them through the instrumentality of a portion of a public

road twenty feet wide and 1,650 feet long. They remain two separate and distinct bodies. The continuity of other portions is prevented also, and they are divided into separate parcels by county roads and the right of way of the Southern Pacific Company.''

This very language the Supreme Court, in denying a hearing, refused to approve. At page 86 the Supreme Court stated:

''The conclusion of the district court of appeal is fully sustained by what is correctly stated as to parcel No. 1, and the remaining parcel or parcels, and in denying a hearing in this court we are not called upon to express or indicate any opinion with regard to whether the parcels other than that numbered 1 together constitute a single body of land.

''Our denial of the petition for a hearing in this court is not to be taken as an assent to what is said in the opinion of the district court of appeal on this point.''

Thus what the Supreme Court condemned was the attempt to use the corridor so as to make two separate parcels one body of land. That court did not approve the holding that a highway or right of way prevented physical contiguity with the city.

In *People* v. *City of Whittier*, 133 Cal.App. 316 [24 P.2d 219], the appellate court discussed the Lemoore case, refused to follow it, and adopted the common sense rule that the existence of a highway or right of way does not prevent land from being contiguous nor, when traversing an area sought to be annexed, do such factors *per se* make each segment a separate body of land. At page 320 the court stated: ''Almost every annexation case reported in appellate decisions of this state shows the annexed area to be traversed by streets, and in no case, except the Lemoore case, can there be found a word of support for the proposition that a street traversing a body of land divides the portion lying on one side from the portion lying on the other side so as to constitute separate bodies of land under the annexation acts.'' A petition for a hearing was denied in this case without a dissenting vote.

In *People* v. *City of South Gate*, 118 Cal.App. 428 [5 P.2d 482], cited by appellants, the holding in fact supports respondents. There it was held that rights of way, water courses, railroad lines and public highways did not divide lands so as to make each segment a separate parcel.

Appellants next make a statutory argument, contending that the existence of such a highway or right of way in

an annexation under the Uninhabited Territory Act, when the statute is properly interpreted, prevents physical contiguity as required by the statute. This statutory argument is predicated upon the fact that title 4, division 2, part 2, of the Government Code, deals with "Alteration of Boundaries." Chapter One of part 2 is entitled "Annexation of Territory," and that chapter, which deals with various methods and types of annexation, is, in turn, divided into five articles. Article 2 contains the Annexation Act of 1913, as amended and codified, which relates to the annexation of inhabited territory. Article 5 contains the Annexation of Uninhabited Territory Act, the particular statute here involved. In article 2 dealing with the annexation of inhabited territory, appears section 35105 which provides: "Contiguous inhabited territory may be annexed as one parcel although divided by a road, stream, or other natural or artificial barrier or right of way." A similar section does not appear in the Annexation of Uninhabited Territory Act. Appellants argue that such omission brings into play the maxim *"expressio unius est exclusio alterius,"* contending that as to uninhabited territory the statute must be interpreted, because it omitted a section similar to section 35105, to have adopted a rule contrary to section 35105. (See for a proper application of such rule of construction, *People* v. *Town of Corte Madera,* 97 Cal.App.2d 726 [218 P.2d 810].)

The argument lacks merit. Section 35105 was added to the Government Code in 1949 when the provisions of the Annexation Act of 1913, as amended, were incorporated into that code. Previous to that time the statutes—both the inhabited and uninhabited annexation acts—merely had a provision requiring physical contiguity. Prior to 1949, as the cases already cited indicate, it was the rule that physical contiguity was not broken by the existence of a highway or right of way. That was the rule before section 35105 was adopted as to both inhabited and uninhabited territories. By expressly including this established rule of law in the Annexation of Inhabited Territory Act the Legislature could not have intended to adopt a contrary rule as to uninhabited territory. To arrive at such a conclusion not only would be highly unreasonable, no logical explanation existing as to why such a basic difference should exist between the two statutes, but would require us to imply that by nonaction the Legislature intended to change existing law. Section 35105 must be construed as being merely declaratory of existing law as to the annexa-

tion of inhabited territory, and it in no way changed existing law as to the annexation of uninhabited territory.

The last major contention of appellants is predicated upon the fact that Corte Madera has used a long narrow railroad right of way one mile long and 150 feet wide, and a right angle corridor to reach Parcel A-2. It is urged that this is "a sham attempt to comply with the law requiring contiguity," that such "shoestring strips" are a "fraud" upon the statute and prevent the annexation from being valid. (App.Op.Br. p. 12.) This is a somewhat strange argument for appellants to make in view of the fact that the validity of the Larkspur annexation depends upon a prior annexation by Larkspur in 1944 of a "shoestring strip" much more pronounced than the one here involved. Appellants do urge, however, that even though there may be physical contiguity, such physical contiguity is not sufficient unless it is also substantial contiguity, and that the courts may set aside an annexation proceeding as a fraud upon the act where the contiguity is secured by a long narrow corridor of the type here involved. To hold otherwise, say appellants, would be to countenance the use of corridors to accomplish a subterfuge and a fraud upon the statute requiring physical contiguity.

The point is without merit. Before discussing the law, something should be said about the facts. The annexation proceeding here did include the right of way of the railroad for a distance of about one mile. But the use of that strip could not have been any part of an attempt to evade the statute so far as Parcel A-2 is concerned. An examination of the map will disclose that to the south of the map that right of way is now within the city limits of Corte Madera. Such examination will also disclose that it was not necessary for Corte Madera to secure contiguity with Parcel A-2 to condemn the mile long strip. Actual physical contiguity with Parcel A-2 could have been secured by simply condemning the east-west corridor of Parcel A-1 and a very short portion of that corridor that runs north and south.

There can be no doubt that the courts will interfere with an annexation proceeding that amounts to a fraudulent abuse of the powers conferred by the statute. *People* v. *City of Lemoore,* 37 Cal.App. 79 [174 P. 93] ; *People* v. *City of Monterey Park,* 40 Cal.App. 715 [181 P. 825] ; *City of Anaheim* v. *City of Fullerton,* 102 Cal.App.2d 395 [227 P.2d 494], are typical cases. These were cases where by various subterfuges the Annexation of Inhabited Territory Act was used to annex

uninhabited territory (the procedure for annexation being radically different under each statute) or vice versa. With the exception of the City of Lemoore case, *supra,* none of them involved the question as to whether the courts have power, where physical contiguity exists, to inquire into the extent of such contiguity. The City of Lemoore case, *supra,* is no longer authority on that point, as already pointed out. There are cases from other jurisdictions of which *Wild* v. *People,* 227 Ill. 556 [81 N.E. 707], is typical, which hold that the use of a corridor, there 50 feet wide and half a mile long, was a mere subterfuge and not a compliance with the law requiring contiguity.

The Illinois case, however, does not represent the law of this state. ▮ The leading case is *People* v. *City of Los Angeles,* 154 Cal. 220 [97 P. 311]. There our somewhat aggressive neighbor to the south, the City of Los Angeles, then situated some 16 miles from the sea, sought to annex a strip of land one-half mile wide and 16 miles long, leading from its then corporate limits to San Pedro Bay. The effect of this march to the sea by Los Angeles was to cut off the cities of Wilmington and San Pedro from further expansion in the direction of the annexed strip. It was contended that this was a fraud upon the statute and should be prohibited. The court, unanimously, held that the shape and extent of the territory to be annexed were political and not judicial questions. At page 223 the court stated: "We make no comment on them [the claimed improper object and purposes of the annexation proceeding] because we are satisfied that whether the territory in question, and of the shape, extent and character fixed, should be annexed to the city of Los Angeles, was purely a political question, which, under the act [Annexation of Inhabited Territory Act] was left to the exclusive determination of the voters of the municipality and the territory sought to be annexed."

Again at page 224 the court stated: "Hence it was doubtless concluded by the legislature in conferring a power of annexation in the general terms used in the statute that the voters in a municipality could best determine whether its growth and conditions surrounding it called for an extension of its municipal limits by the increase of additional territory and its extent, and that the voters of the territory proposed to be annexed could with equal wisdom determine whether it was of advantage to them to become a part of the municipality to the extent and in the form as proposed. With the wisdom

of their determination in the matter the courts cannot inter-
fere. They only interfere where some substantial provision
of the law has been violated or where fraud was perpetrated
in the matter of the boundaries or the extent of the annexed
district. That the extent and shape which the annexed terri-
tory shall take is a political, and not a judicial question, is
clear from the conclusion announced by this court in the case
of *People* v. *Town of Loyalton,* 147 Cal. 774 [82 P. 620]."
(See, also, *People* v. *City of Whittier,* 133 Cal.App. 316, par-
ticularly at p. 322 [24 P.2d 219].)

These two cases, as pointed out by appellant, did arise under
the Annexation of Inhabited Territory Act, while the present
case arises under the Annexation of Uninhabited Territory
Act, but there is no substantial difference in the two statutes
on the point under discussion. Moreover, under the very act
here involved, it has been held that the rule of the Los
Angeles case is applicable. In *City of Burlingame* v. *County
of San Mateo,* 90 Cal.App.2d 705 [203 P.2d 807], the Mills
estate, consisting of 730 acres, was located in unincorporated
territory lying between the cities of Millbrae and Burlingame.
The city of Burlingame annexed a 100-foot strip 2.8 miles
long completely surrounding the Mills estate on three
sides so as to cut it off from all contact with Millbrae, and
to enclose the Mills estate as unincorporated territory free
from any possibility of being annexed to any other city but
Burlingame. Certainly the factual situation thus disclosed
shows, on its face, far clearer than do the facts of the instant
case the purpose and intent of the annexing city. The court
refused to consider the charge that the motives of the an-
nexing city were improper, or that there was not substantial
contiguity, holding those to be political and not judicial ques-
tions.

At page 709 the court stated: "Contiguity does not depend
on the extent of the property annexed and the question
whether a municipal corporation should annex certain terri-
tory is political rather than judicial." After quoting exten-
sively from the Los Angeles case, *supra,* the court stated (p.
710): "The only limitation imposed by the statute in our case
is that the annexed property must be contiguous to Bur-
lingame. The 'horseshoe strip,' as respondent calls it, is con-
tiguous to, i.e., has a common boundary with, Burlingame for
an aggregate distance of 200 feet and 'the extent and shape
which annexed territory shall take is a political, and not a

judicial question.' '' After again quoting from the Los Angeles case the court continued (p. 711):

"The wisdom or expediency of the annexation of this territory is not a concern of the courts. We can go no further than to see that the existing laws are complied with. . . .

"The motives of the city council of Burlingame (5 Cal.Jur. 640) or of Mills Estate, Incorporated (1 Cal.Jur. 336) cannot be inquired into so long as they proceeded according to established law.''

The Supreme Court denied a hearing in this case, with but one justice dissenting. That case is decisive of the problem here presented. It was not qualified in any respect by the decision in *People* v. *Town of Corte Madera,* 97 Cal.App.2d 726 [218 P.2d 810], because that case involved an entirely different problem—i.e., whether three different parcels each contiguous to the annexing city but not contiguous with each other, could be annexed in one proceeding. That is not the problem here presented.

It should be pointed out that the extremes of gerrymandering made possible by the Burlingame case are now at least partially prohibited by changes in the law adopted in 1951. (See sections 35002.5, 35105.5 and 35304.5 as added in 1951.) These statutory changes, however, are not applicable to the present case, having been passed subsequent to the proceedings here challenged. They would not, if applicable, have prevented the annexation here involved.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 19, 1953.