[Civ. No. 5720.   Fourth Dist.   Oct. 29, 1958.]

WALTER R. SCHMID et al., Respondents, v. CITY OF STANTON et al., Appellants.

*Assigned by Chairman of Judicial Council.

Rimel & Johnston for Appellants.

Tiday, Pool & Moore, Ronald Tiday, Blodget, Gilbert & Cochran and L. W. Blodget for Respondents.

MUSSELL, J.—In these proceedings petitioners sought and obtained a writ of mandate restraining the city of Stanton from taking any further action in connection with annexation to said city.

On August 8, 1956, proceedings were initiated to annex certain property to the city of Stanton. These proceedings were known as the "South Annexation" and September 24, 1956, was set as the time for hearing protests. However, on August 31, 1956, at a special meeting, the city council, by

resolution, terminated the proceedings on said "South Annexation." Several protests had been prepared for filing but after notice of such termination from the city clerk to the protestants, they were delivered to protestants' attorney and were not filed with the city clerk. In this connection the city clerk's minutes of September 24, 1956, the date set for the hearing, show that no protests were received. These protests covered between 60 and 75 per cent of the assessed valuation of the property sought to be annexed.

On October 29, 1956, the city council adopted resolution Number 28, declaring that proceedings had been initiated by the city council of said city to annex to said city certain uninhabited territory described therein and designated as "Stanton Avenue Annexation No. 2," giving notice of the proposed annexation and of the time and place for hearing protests. December 17, 1956, was fixed as the time for hearing protests, which were received and were referred to the city engineer for examination and report. On January 7, 1957, the date to which the hearing was continued, the protests were found to represent less than 50 per cent of the assessed valuation of the property in the proposed annexation and the territory sought to be annexed was determined to be uninhabited. On January 14, 1957, an ordinance by the city council approving "Stanton Avenue Annexation No. 2" was passed for second reading and on January 18, 1957, an alternative writ of mandate was issued by the superior court staying further proceedings.

On February 14, 1957, the following minute order was entered:

"71105 SCHMID vs. CITY OF STANTON

"Court finds: 1. that there were eleven (11) registered voters residing within the proposed annexed territory at the time of the institution of proceedings on motion of city council. 2. that fraud was perpetrated in the matter of the establishment of the boundaries of Stanton Avenue annexation #2 and that these proceedings are a subterfuge to force property enclosed therein into the City of Stanton. City of Stanton permanently restrained from taking any further action in connection with proposed annexation proceedings."

This minute order was followed on March 12, 1957, by written findings, in part as follows:

"II That the Stanton Avenue Annexation No. 2 proceedings described some of the land that had been included in the 'South Annexation,' and that said Stanton Avenue Annexa-

tion proceedings described other lands that surrounded part of some of the Petitioners land that had been included in the description in the said South Annexation, leaving only a narrow exit as shown by maps entered into evidence.

"That Respondents cut property lines taking in portions of some of the Petitioners property, and omitting some of their property, and the Court finds that such action was taken and done by Respondents for the purpose of circumventing and avoiding the intent and meaning of the Statutes of this State relative to the annexation of uninhabited territory in that they omitted said cut properties for the purpose of depriving the owners thereof from being able to use the assessed valuation of such omitted portions in their protests.

"III The court further finds that fraud was perpetrated in the matter of the establishment of the boundaries of Stanton Avenue Annexation No. 2, and that said proceedings are a subterfuge to force property enclosed therein into the City of Stanton.

"IV The Court further finds that there were eleven (11) registered voters residing within the area proposed to be annexed at the time of the institution of the proceedings in connection with the Stanton Avenue Annexation No. 2.

"V The Court finds that the property proposed to be annexed is contiguous to the City of Stanton."

In the judgment which was then entered the city of Stanton was permanently restrained from taking any further action in connection with these annexation proceedings. The city and the members of the council appeal from the judgment and from the minute order of February 14, 1957.

It is contended by the appellants that fraud was not pleaded or proved; that the court erred in the scope of review; and that its finding of fraud is contrary to the evidence.

The judgment of the trial court is apparently based on findings and conclusions that fraud was perpetrated in the matter of the establishment of the boundaries of the second annexation and that the proceedings were a subterfuge to force property included therein into the city of Stanton.

The trial court's finding of fraud is not supported by the evidence. In *People* v. *City of Los Angeles*, 154 Cal. 220 [97 P. 311], in proceedings to test the legality of the annexation of a wide strip of land immediately adjacent to the city, together with a strip about 16 miles long and one-half mile wide, it was held that under the Annexation Act of March 19, 1889, there was no limitation expressed in the statute as

to the extent or form of territory to be annexed; that it has plainly left the matter of the annexation of territory to a municipality to be determined by the people . . . the voters of the municipality and the territory to be annexed; that the legislature itself, in the very nature of things, could not lay down any rule as to the extent, shape, or character of territory which might be annexed to any given municipality, and that the extent and shape which the annexed territory shall take is a political and not a judicial question.

In *City of Burlingame* v. *County of San Mateo*, 90 Cal.App. 2d 705, 710 [203 P.2d 807], a "horseshoe" strip annexation cut off 730 acres from incorporation into any other municipal corporation and the court said:

"Equally political, and not judicial, is the fact that 730 acres are cut off by the 'horseshoe strip' from ever being incorporated into any city other than Burlingame (unless the 730 acres or some part of them should be incorporated into a newly formed municipality inside the 'horseshoe strip')."

And on page 711:

"The wisdom or expediency of the annexation of this territory is not a concern of the courts. We can go no further than to see that the existing laws are complied with." See also *People* v. *Town of Corte Madera*, 115 Cal.App.2d 32 [251 P.2d 988].

In *People* v. *City of Whittier*, 133 Cal.App. 316, 322 [24 P.2d 219], it was held that the drawing of the lines in annexation proceedings so as to include those favorable and exclude those unfavorable to the annexation proceedings and the non-communication as to the initiation of the proceedings did not constitute fraud.

In *Johnson* v. *City of San Pablo*, 132 Cal.App.2d 447, 457 [283 P.2d 57], where the gist of an amendment to the pleadings was that the city of Richmond and the petitioning landowners commenced and conducted annexation proceedings for the sole purpose of blocking the city of San Pablo and that Richmond and the landowners had no intention of completing the proceedings, the court held that such allegations did not present a justiciable controversy; that the wisdom or expediency of the annexation is not a concern of the courts; that they can go no further than to see that existing laws are complied with; and that the motives of the city council cannot be inquired into so long as they proceed according to established law.

In the instant case the evidence does not sustain the trial

court's finding that there was fraud in the establishment of the boundaries of Stanton Avenue Annexation Number 2.

The extent and shape of the area sought to be annexed is a political and not a judicial question under the rules announced in the foregoing cases and the record before us.

In this connection the record shows that a rectangular area, surrounded on all sides by property sought to be annexed, except for a distance of 320 feet on the east side thereof, was not included in the area sought to be annexed. It is claimed by petitioners that by excluding this area a fraud was perpetrated upon them. However, a somewhat comparable claim was made in *Rafferty* v. *City of Covina*, 133 Cal.App.2d 745, 753 [285 P.2d 94], and the court there said:

"Plaintiffs argue that if WAD 18 proceedings were held valid 'its effect would be to virtually surround a large area of unincorporated lands as was true in the Burlingame case. . . .' A glance at the map reproduced herein shows there is no such situation in this annexation. Furthermore, anticipating this problem, the Legislature, in 1951, enacted section 35326 of the Government Code which provides that 'Territory shall not be annexed to a city . . . if, as a result of such annexation, unincorporated territory is *completely surrounded* by such city.' (Italics added.) This, of course, is a matter of public policy on which the Legislature, and not the courts, has the right to speak. (*People* v. *Town of Corte Madera, supra.*) The Legislature has said there shall be no encirclement of unincorporated territory. Beyond that it has not gone. The court's function in the premises is to interpret the rules laid down by the Legislature, not to make new or additional rules. (*Johnson* v. *City of San Pablo*, 132 Cal.App. 2d 447, 457 [283 P.2d 57].) Plaintiffs' argument on this point is completely lacking in merit."

It is claimed by the petitioners that the city council deliberately abandoned the first annexation proceedings with intent to lead protestants into a sense of security and that after this plan worked, they instituted the second annexation proceedings and drafted the boundary lines in such a manner as to exclude sufficient property so as to reduce the protests below 50 per cent, and that these acts constituted fraud. We are not in accord with the legal sufficiency of this argument. The record shows that the first annexation was terminated approximately two months before the second was commenced and protestants were notified by the city clerk of such termination. Proper notice was then given of the second annexation

proceedings and protests were filed as to them. The motives of the city council cannot be inquired into since the second proceedings were conducted in accordance with the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, § 35300 et seq.).

Judgment and order reversed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied November 20, 1958, and respondents' petition for a hearing by the Supreme Court was denied December 23, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.