[Civ. No. 23229.    First Dist., Div. Three.    Mar. 3, 1967.]

THE PEOPLE ex rel. MARK TUBAN et al., Plaintiffs and Appellants, v. CITY OF MOUNTAIN VIEW, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Clayton P. Roche, Deputy Attorney General, Gazzera & Antonioli and William A. Antonioli for Plaintiffs and Appellants.

Fred Caploe, City Attorney, William Anderson, Assistant City Attorney, Atherton & Johnson and Michael Atherton for Defendant and Respondent.

BROWN (H. C.), J.—This is an action in quo warranto, brought by the People of the State of California on relation of Mark Tuban and others to have declared void Ordinance No.

175.586 of the City of Mountain View which approved the annexation of an area of land known as "El Camino 16-A."

The annexation was conducted in 1959-1960 pursuant to the "Annexation of Uninhabited Terrotory Act of 1939." (Gov. Code, §§ 35300-35326.)[1] The appellants contend that the annexation was in violation of this act in the following particulars: (1) the City Council of Mountain View wrongfully refused to consider certain protests, (2) the subject territory "El Camino 16-A" was not contiguous to the City of Mountain View, (3) the subject territory consisted of more than one single body of land, and (4) the City of Mountain View lacked jurisdiction to entertain the petition for annexation because a segment of "El Camino 16-A" was contained in a prior annexation proceeding in which a majority protest was filed less than one year prior to the initiation of "El Camino 16-A" proceedings.

*The Facts.*

A stipulation consisting of an agreed statement of facts was filed at the inception of the trial and may be summarized as follows: On May 11, 1959, the City Council of Mountain View adopted a resolution giving notice of the proposed annexation of a certain area of land known as "El Camino 13." A protest hearing was held on July 13, 1959, and the annexation was protested by the owners of 100 percent of the assessed value of the property contained in the area proposed to be annexed. In view of this protest a motion to terminate the annexation proceedings was duly passed by the council. The council, however, did not otherwise disapprove nor did it enact an ordinance disapproving the annexation.

Approximately three and one-half months later, on October 26, 1959, by petition of the owners of 52.06 percent by area and assessed valuation of the area proposed to be annexed, the City Council of Mountain View adopted Resolution No. 2991, giving notice of the time and place for hearing protests to the annexation of "El Camino 16-A." The proposed annexation of "El Camino 16-A" also included all the land included in the previous resolution to annex "El Camino 13." The date for hearing of protest was set for December 14, 1959, and the

[1]All statutory references are to the Government Code. The Legislature, subsequent to 1960, amended sections of the act, as will be hereinafter noted in the opinion.

time at 7:30 p.m. The resolution provided that the protests "must" be in writing and "may" be filed at any time before the hour set for hearing objections to the proposed annexation. Prior to 7:30 p.m. on December 14, 1959, the city had received protests of owners of property comprising only 18.90 percent of the assessed valuation. After the meeting commenced, at 7:59 p.m., a petition containing written protests of an additional 35.52 percent was submitted by Mark Tuban, one of the relators herein. The city council continued the public hearing on the proposed annexation until January 11, 1960, for the purpose of verifying the signatures as it was apparent that some of the property owners had signed both the petition to annex and also a protest. Between the time of the hearing of December 14, 1959, and the continued public hearing on January 11, 1960, the members of the city staff had secured a number of waivers of protest so that at the time of the continued hearing 41.98 percent were protesting and 58.02 percent favored the annexation. The council then adopted Ordinance No. 175.586 approving the annexation of "El Camino 16-A" and thereafter completed the annexation by filing a copy of the ordinance of approval with the Secretary of State. (§§ 35316-35318.)

■ (1) The contention of appellants that the city council should have considered protests submitted after the hour set for hearing objections is without merit.

The manner of protesting the annexation provided for in the resolution is similar to the wording of section 35312 as it read at the time of the annexation in question. The pertinent part of the resolution reads as follows: "The protest must be in writing, *may* be filed at any time before the hour set for hearing . . . , and shall state the name or names of the owner . . . of the property affected . . ." (Italics added.)

Appellant seeks to interpret the word "may" as it is used in the statute and in the resolution as permitting protests to be submitted during the hearing. This issue was settled by *People* v. *Palm Springs*, 51 Cal.2d 38 [331 P.2d 4]. "The statutory language is clear. . . . Plaintiff seeks to give a permissive reading to this section, relying on the word 'may.' But the section means exactly what it says—only written protests filed before the hour set for hearing need be considered. The section is permissive only to the extent that no one is required to file a protest. Any other construction would render meaningless the limiting words in the next succeeding

section, [Gov. Code, § 35313] which requires 'the legislative body . . . [to] hear and pass upon all protests *so* made.'" (At p. 43.) The further contention of appellants that the city council could not properly permit property owners who had filed protests to withdraw such protests finds support in *Daily v. City of Pomona,* 207 Cal.App.2d 637 [24 Cal.Rptr. 618] but this does not alter the fact that prior to the hour set for hearing, the protests that had been received by the city council amounted to only 18.90 percent, far short of the 50 percent required to void the annexation.

The trial court found in accordance with the *Palm Springs, supra,* and *Pomona, supra,* decisions that the protests submitted after 7:30 and the waivers of protest subsequently submitted did not have any legal significance but were considered by the city council only as additional facts. The city council could disapprove the annexation even if the legal majority of the owners of the assessed valuation desired annexation.[2]

Appellant argues that not to permit the filing of protests during the meeting is to defeat the will of the property owners on a technicality. But it also would be just as technical to refuse at this meeting to permit property owners to withdraw protests. If the city council had permitted both protests and waivers of protest to be considered valid before the final adjournment or considered both invalid, those favoring annexation would have prevailed in either event. The will of the majority was not defeated by technicalities in this case.

Although not applicable here, it is to be noted that in 1961, approximately one year after the final date of the annexation in question and some three years after the date of the *Palm Springs* case, *supra,* section 35312 was amended to allow written protests to be submitted at any time prior to final adjournment. (Stats. 1961, ch. 1599, § 1, p. 3426.) Also, in 1961, section 35012 was added to allow any person making a written protest to withdraw his protest at any time prior to final adjournment of the hearing on protests. (Stats. 1961, ch. 1604, § 1, p. 3431.)

■ (2) Appellants claim that the subject territory "El Camino 16-A" is not contiguous to the City of Mountain View.

___

[2]Section 35314 provided: "If such a [majority] protest is not made, the legislative body shall approve or disapprove the annexation, by ordinance." (See fn. 7, *infra.*)

"El Camino 16-A" is roughly comprised of three distinguishable areas, that is (1) one area coterminous with the preexisting city boundaries and (2) a connecting link of territory which connects the coterminous land with (3) a large area some distance from the city limits which is coterminous only with the connecting link. El Camino Real, which runs the length of "El Camino 16-A" is included in the annexation, and abuts upon the areas of land annexed with one exception. This exception is that the connecting link at its most distant point from the city boundaries is comprised solely of a portion of El Camino Real 164.83 feet in length. The remaining portion of the connecting link has a length of 212.50 feet and a maximum width of 114.64 feet, exclusive of roadways. The overall length of the connecting link is 377.33 feet.

Appellant contends that the annexation of "El Camino 16-A." was in violation of section 35002.5 which provides[3] as follows: "Territory shall not be deemed contiguous as the word 'contiguous' is used in this chapter if the only contiguity is based on a strip of land over 300 feet long and less than 200 feet wide, such width to be exclusive of highways." At the immediate nexus of the area to be annexed and the area of the City of Mountain View there is contiguity for a greater distance than required by section 35002.5. " 'The *only* contiguity' " required by section 35002.5 is that the immediate nexus of the territory being annexed must not be a " 'strip of land over 300 feet long and less than 200 feet wide, such width to be exclusive of highways.' " (Italics added.) (*People ex rel. Hamilton* v. *City of Santa Barbara*, 205 Cal.App.2d 501, 505 [23 Cal.Rptr. 240].) The court reasoned that the word "only" was placed in the statute for a purpose and must be given its plain meaning.

The court in construing section 35002.5 and the legislative intent states: " 'Moreover, the Legislature, not unmindful of the peculiar annexations attempted by some cities (e.g., *City of Burlingame* v. *County of San Mateo, supra*, 90 Cal.App.2d 705 [203 P.2d 807] [a horseshoe shaped territory 100 feet wide, 14,950 feet long, and enclosing 730 acres of unincorporated territory]), has made no attempt to state a general rule governing the shape, character or extent of territory that may be annexed; rather, its efforts have been confined to curbing

---

[3]This section was subsequently amended in 1965 but the amendment did not change the above quoted portion of the statute.

particular abuses of the annexation acts. (See, e.g., Gov. Code, §§ 35002.5, 35326.) By this treatment of the problem, the Legislature has manifested an intent that the courts should continue to treat these questions as political in nature, and that an annexation should not be declared invalid unless some express statutory provision has been violated.' '' (*People* ex rel. *Hamilton* v. *City of Santa Barbara, supra,* pp. 505-506.)

The trial court correctly found that the annexed parcel was contiguous within the meaning of the statute.

■ 3. Appellants claim that "El Camino 16-A" is composed of two independent parcels which are united by a road strip and is therefore void as an attempt to annex two noncontiguous parcels in a single annexation proceeding.

It is well settled that two or more parcels not contiguous to each other may not be annexed in a single proceeding under the Annexation of Uninhabited Territory Act of 1939. (*People* v. *Town of Corte Madera,* 97 Cal.App.2d 726 [218 P.2d 810]; *People* v. *Town of Corte Madera,* 115 Cal.App.2d 32 [251 P.2d 988].)

It is conceded that at one point the area contained in "El Camino 16-A" is connected by a strip of highway approximately 90 feet wide and 164.83 feet long. Appellants rely on *People* v. *City of Lemoore,* 37 Cal.App. 79 [174 P. 93], which involved section 6 of the Annexation Act of 1913 (Stats. 1913, p. 582). (The act of 1913 is presently found in sections 35000 et seq.) Section 6 required two or more bodies of outside territory to be submitted to the electors of any municipal corporation as separate propositions. (*People* v. *City of Lemoore, supra,* p. 80.) Mr. Justice Peters reviewed the *Lemoore* case in *People* v. *Town of Corte Madera, supra,* 115 Cal.App.2d 32, as follows: "In that case the City of Lemoore sought to annex nine parcels of land in one single election. Considered separately, some of the nine parcels were inhabited and some uninhabited. The court properly held that this constituted an attempt to annex land constituting more than 'one body' of land as those words are used in the annexation statutes. Parcel 1 (see map, p. 83 of opinion) was completely separated from all other parcels, except that it was connected to Parcel 2 by a strip of the county road 1,650 feet long and 20 feet wide. The actual holding is that Parcel 1 and Parcel 2 are separate 'bodies' of land and therefore, under then existing law, their annexation had to be submitted separately to the voters." (At pp. 41-42.) The *Lemoore* court also stated that the existence of county roads and a railroad right of way

divided other portions of the annexed territory into separate parcels and prevented contiguity. This part of the opinion has been disapproved. (*People* v. *City of Whittier,* 133 Cal.App. 316 [24 P.2d 219]; *People* v. *Town of Corte Madera, supra,* 115 Cal.App.2d 32.)

The language of section 6 of the 1913 act is not found in the act of 1939.[4] "[W]hen the Legislature in 1939 used the word 'territory' it meant only a unified, solid, area, lying contiguous to one of the boundaries of the municipality." (*People* v. *Town of Corte Madera, supra,* 97 Cal.App.2d 730.)[5]

The *Lemoore* case then is distinguishable from the case at bar. In *Lemoore* the court disapproved of an attempt by the City of Lemoore to use a portion of a county road 20 feet wide and 1,650 feet long to connect two separate parcels of land in order to have the annexed territory qualify as one body of land (within the meaning of the act of 1913). However, here the trial court found the area comprising "El Camino 16-A" to be one parcel; the fact that a small portion of that parcel is made up solely of a right of way does *not* destroy the contiguity of the annexed territory (as required by the act of 1939). (See map, p. 35, *People* v. *Town of Corte Madera, supra,* 115 Cal.App.2d 32.)

4. Appellants finally contend that in May of 1959, the City Council of Mountain View adopted a resolution giving notice of the proposed annexation of an area of land known as "El Camino 13." At the hearing held by the city council in June 1959, 100 percent of the owners of the assessed valuation protested the annexation. As a result of this protest the city council by motion terminated further proceedings but did not otherwise disapprove nor did it pass an ordinance disapproving the annexation. The area comprising "El Camino 13" is a segment of land now contained in the "El Camino 16-A" proceedings which were commenced on October 26, 1959, less than one year later.

Three sections of the Government Code, as they existed at the time of the annexation proceedings of "El Camino 16-A" in 1959-1960, are controlling. Section 35313 read as follows:

[4]Section 35104 now provides as follows: "To qualify for annexation, new territory shall be contiguous to: (a) The city, or (b) Contiguous territory where the electors have voted for annexation to the city."

[5]Section 35302 provides merely that "contiguous uninhabited territory" may be annexed to a city.

"At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made. If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, further proceedings shall not be taken."[6] Section 35314 read as follows: "If such protest is not made, the legislative body shall approve or disapprove the annexation by ordinance."[7] Section 35315 read: "If the legislative body disapproves the annexation, a new petition or proceeding embracing any of the same territory shall not be filed with, or initiated by, the city for 12 months after the effective date of the ordinance."[8]

These sections empowered a city to annex contiguous territory if (1) a majority of the assessed valuation of the territory to be annexed favored annexation, and (2) the city, through its legislative body, also favored the annexation. The Legislature gave "both sides" in an annexation proceeding an opportunity to decide. Section 35313 permitted the *property owners* to protest the annexation, and placed no limit on new proceedings. Section 35314 permitted the *legislative body* to disapprove the annexation if approved or disapproved by the property owners. A one-year limitation on new proceedings was imposed by section 35315 only upon disapproval by ordinance by the legislative council. The city

---

[6]Since the annexation in this case, the Legislature has amended section 35313. Section 35313.2 now provides: "The city legislative body shall find and declare by resolution adopted at the hearing or within 30 days after the closing of the hearing on protests whether or not a majority protest has been made. If it does not adopt such a resolution within such period, it shall be deemed to have adopted on the 30th day a resolution that a majority protest has been made.

"If a resolution finding and declaring that a majority protest is made is adopted or deemed adopted, *no further proceedings for the annexation of any of the same territory to the city shall be taken for one year after the date of the adoption of the resolution* except upon the petition or consent of all property owners of the territory proposed to be annexed." (Italics added.)

[7]Section 35314 now reads: "If the city legislative body finds by resolution adopted pursuant to Section 35313.2 that a majority protest has not been made, the legislative body shall approve or disapprove the annexation, by ordinance adopted within 60 days after the hearing on protests. If the legislative body fails to adopt the ordinance within such period, it shall be deemed to have adopted, on the 60th day of such period, an ordinance disapproving the annexation."

[8]Section 35315 now reads: "If an ordinance disapproving the annexation is adopted or deemed to have adopted, a new petition or proceeding embracing any of the same territory shall not be filed with, or initiated by, the city for 12 months after the date of the adoption of the ordinance."

council here did not disapprove the annexation by ordinance. The one-year limitation provided in section 35315 on new proceedings of annexation embracing the same territory did not apply.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.